Filed 11/29/18

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| JAMES F. ZISSLER, as Trustee, etc., | 2d Civil No. B286043 (Super. Ct. No. 16CV02421) (Santa Barbara County) |
| Plaintiff, Cross-defendant, and Respondent, | |
| v. | |
| PATRICK J. SAVILLE, as Trustee, etc., | |
| Defendant, Cross-complainant, and Appellant. | |

Beauty may be in the eye of the beholder but legal ambiguity is not. As we shall explain, there is no objective legal ambiguity in the easement here at issue.

Patrick J. Saville, as Trustee, appeals from a judgment entered in favor of respondent James F. Zissler, as Trustee. These Montecito neighbors have a dispute over an easement. The trial court "interpreted" an ingress-egress easement burdening respondent's property for the benefit of appellant's property. The trial court ruled that the easement was ambiguous, decided the

case based upon extrinsic evidence of historic use, and added language limiting the easement.

We reverse and remand the matter with directions to prepare a new judgment consistent with the views expressed in this opinion. Our analysis is guided by these general principles: 1. A broad grant of a right-of-way easement "'will ordinarily be construed as creating a general right of way capable of use . . . for all reasonable purposes." (*Laux v. Freed* (1960) 53 Cal.2d 512, 525 (*Laux*); see *post*, p. 11.) 2. "[A] bona fide purchaser for value who acquires his interest in real property without notice of another's asserted rights in the property takes the property free of such unknown rights." (*Melendrez v. D & I Investment, Inc.* (2005) 127 Cal.App.4th 1238, 1251.)

*Facts*

The trial court's 47-page statement of decision provides a detailed factual summary. We draw upon it to explain the facts. (See *Axis Surplus Ins. Co. v. Reinoso* (2012) 208 Cal.App.4th 181, 184, fn. 1.)

The unpaved dirt road easement was created by a grant recorded in 1994. As Appendix A to this opinion, we attach a photo showing the location of the easement. The document granting the easement is attached as Appendix B. George and Annette Corbett conveyed to Peter and Kristi Lupoli an easement "[p]roviding Grantee access, ingress and egress to vehicles and pedestrians over Grantors' real property from Green Meadows Road to Grantees' real property." The easement runs across "the most easterly portion of Grantors' real property." It is 10 feet wide and 90.46 feet long.

Respondent purchased his property from the Corbetts (the grantor) in 1999. Appellant purchased his property from the

2

Lupolis (the grantee) in 2013.  Appellant's rectangular property, which consists of about two acres, fronts onto and is accessible from Picacho Lane.  (See Appendix A.)  Appellant's property is hereafter referred to as the "Picacho property."  The easement provides access from Green Meadows Road over respondent's one acre parcel to the back unimproved portion of the Picacho property.  The main entry to the Picacho property is on Picacho Lane.

Peter Lupoli, a lawyer, drafted the document granting the easement.  He told the Corbetts that the easement "'would always be used lightly'" and "sparingly and infrequently."

When Peter Lupoli drafted the easement, he intended it "'to be prohibitive of construction access'" and to be "'used infrequently [by the Lupolis and their gardener] for landscape purposes.'"  "'[I[t would be used in a non offensive way.'"  Peter Lupoli also intended that no "'heavy vehicles'" would be allowed on the easement.  By "heavy," he meant "'anything much bigger than a pickup truck.'"  There was no showing that Peter Lupoli communicated to the Corbetts his subjective intent as to the scope of the easement.  The Corbetts did not testify.

Kristi Lupoli testified that the Corbetts "kindly let us have that easement because they knew [that without the easement] it would be very difficult for us to maintain the back part of the [Picacho] property."  "The easement definitely makes a difference in being able to use the back part."

Jose Lorenzo, appellant's present gardener and the Lupoli's former gardener, testified that he drove a pickup truck and on average used the easement three times per month for landscaping purposes.

3

Appellant is a licensed real estate broker. He testified: He paid $4.7 million for the Picacho property. He intended to develop it as an estate property, and the easement "was necessary to carry out his plan." Without the easement, "the property value was reduced 40%." "[T]here is no way to drive a vehicle to the rear of the property other than [on] the Easement." Before appellant purchased the Picacho property, no one said that the easement was subject to any restrictions in addition to those expressly set forth in the document granting the easement.

Appellant originally intended to use the easement for a construction project on the Picacho property that "involves the complete demolition of the house, garage and swimming pool and the construction of significantly larger buildings and amenities. It includes very significant cut and fill." Appellant "contend[ed], based on his review of the Easement[,] that it can be used for all access, ingress and egress - within the ten feet [width] - for any purpose, whether it be construction or digging a well." "[H]e believed he had 'unrestricted['] all vehicle access and all pedestrian access via use of the Easement pursuant to a written agreement."

Darrell Becker, respondent's construction expert, opined that the proposed construction project would take from 18 to 24 months to complete and would involve 14,000 trips to the Picacho property.

Alan D. Wallace, an attorney and adjunct professor at UCLA and Loyola law schools, testified as an expert witness for appellant. He did not appear at the trial; a video of his deposition was shown. Wallace spoke "about how the [real estate] industry views things and how [respondent's] interpretation of the [easement] affects the industry." Wallace

4

"opine[d] that to rely on historic use [of the easement] or intent [of the parties creating the easement] would wreak havoc in the industry." "It would be disastrous to have to ferret out what the grantor or grantee intended because something is not delineated in the document." Wallace agree[d] that [appellant] as a buyer and broker had a reasonable duty to investigate the Easement if there was something unclear; but since this was a standard easement, no investigation was required." The easement "is clear on its face; . . . when the words are as broad as this, there is no reason to consider intent or historic use." The trial court rejected Wallace's testimony and his legal opinion.

*Respondent's Complaint and Appellant's*
*Cross-Complaint*

Respondent filed a complaint against appellant for declaratory and injunctive relief. It alleges: "[Respondent] contends the grant of Easement is general in that the Easement does not specify or limit the extent of use nor the extent of the burden imposed upon [respondent's] Property. Therefore, [respondent] contends that the permissible use is determined in the first instance by the intention of the parties. Once the Easement has been used for a reasonable period of time, and it has been [so used], [respondent] contends the extent of its use is established by its past use."

The complaint requests "a declaration that use of the Easement is limited to its historic use, not exceeding twelve (12) vehicle trips per year unrelated to construction activity." It also requests the issuance of a permanent injunction prohibiting appellant and his successors in interest from "a. Using the Easement for ingress and egress related to construction activity;

5

and [¶] b. Using the Easement . . . in excess of twelve (12) vehicle trips in any twelve-month period."

Appellant filed a cross-complaint against respondent alleging causes of action for declaratory and injunctive relief and to quiet title to the easement. Appellant contended that he may "pav[e] or otherwise resurfac[e] the Easement to make it accessible year round."

*Trial Court's Ruling in Its Statement of Decision*

The trial court denied appellant's "request to 'exclude extrinsic evidence or parol evidence' related to the parties['] 'intent in drafting or signing the Easement.'" It rejected appellant's argument "that the Easement is not ambiguous and there is no reason to look outside of the document." The court concluded that the easement is ambiguous because the grant of the easement "is silent on the subject of frequency of use of the easement, what vehicles are contemplated, or the purpose of its use." (See *post*, pp. 10-11.)

The court considered the servitude to be "a 'General Easement' for pedestrian and vehicular access, ingress and egress, failing to specify the nature and extent to which the Easement may be used." The court continued, "The rule is well-settled that where a grant of an easement is general as to the extent of the burden to be imposed on the servient tenement, an exercise of the right, with the acquiescence and consent of both parties, in a particular course or manner, fixes the right and limits it to the particular course or manner in which it has been enjoyed." This rule was set forth in *Winslow v. City of Vallejo* (1906) 148 Cal. 723, 725 (*Winslow*). The court stated, "The Easement is restricted to its historic use and the purpose for which the Easement was originally granted."

6

The court concluded that the testimony of Kristi Lupoli was controlling. She said that the purpose "was to allow limited and infrequent access to [the Lupolis'] back yard for landscape purposes and occasional access for their caterers; . . . the Easement was not . . . intended for heavy use, frequent use or construction related activities." (Italics omitted.) The court determined that appellant's "proposed use of the Easement [for his construction project] is unreasonable" because it "would overburden the Easement."

The court rejected appellant's contention that he may pave the easement: "[T]here has never been a need to pave the Easement for its intended use." "[T]here is only one reason [appellant] wants to pave the Easement; he wants to do so to accommodate his intention to overburden the Easement."

*Judgment*

The judgment provides that the easement may be used for pedestrian and vehicle access, ingress, and egress "only as reasonably necessary for landscape maintenance at the rear of the [Picacho] property and other incidental use, at occasional and reasonable times." "[T]he easement may not be used for any other purposes," including "access, ingress and egress related to construction activity on the [Picacho] property." "The Easement road surface shall remain unpaved." The judgment grants a permanent injunction prohibiting appellant and his successors in interest "from using the Easement in a manner inconsistent" with the judgment. The court "reserve[d] jurisdiction over this case as there may well be future disputes over the Easement."

7

*Appellant's Concession that the Issue of*
*Access for His Construction Project Is Moot*

In his opening brief appellant asserts, "The issue of access for [his] construction project has . . . become moot and its reasonableness under a proper interpretation of the Easement's unlimited scope does not have to be considered." Appellant explains: "[He] no longer intends to use the Easement to build his house; by the time this appeal has been briefed, heard, and decided, construction of the house will have already begun and decisions regarding access routes and staging will have been made based on not using the Easement." "After construction is completed - without use of the Easement - [he] still intends to use the Easement as a service entrance, e.g. for maintenance workers, gardeners, and cleaners, and for other purposes related to maintaining the house as reasonably necessary. Those purposes are imminently [*sic*] reasonable for an ingress-egress easement in a premier street [in] Montecito."

Since appellant concedes that the case has become moot to the extent it concerns access for his construction project, we need not review the portion of the judgment prohibiting him from using the easement for construction activities. (See *Peat, Marwick, Mitchell & Co. v. Superior Court* (1988) 200 Cal.App.3d 272, 285 ["We presume the Supreme Court does not want us to engage in the futile exercise of reviewing a moot order"].) Otherwise, the case is not moot.

*Interpretation of Easements and Standard of Review*

"'An easement is a restricted right to specific, limited, definable use or activity upon another's property, which right must be *less* than the right of ownership.' [Citation.]" (*Scruby v. Vintage Grapevine, Inc.* (1995) 37 Cal.App.4th 697, 702 (*Scruby*).)

8

"An easement agreement is subject to the rules of interpretation that apply to contracts. [Citations.] . . . As with all contracts, the paramount goal of interpreting a writing creating an easement is to determine the intent of the parties. [Citation.]" (*Hill v. San Jose Family Housing Partners, LLC* (2011) 198 Cal.App.4th 764, 777.) But "'[i]t is fundamental that the language of a grant of an easement determines the scope of the easement.' [Citation.]" (*Schmidt v. Bank of America, N.A.* (2014) 223 Cal.App.4th 1489, 1499.) "The extent of a servitude is determined by the terms of the grant." (Civ. Code, § 806.)

*Winslow v. City of Vallejo*

Based on *Winslow*, *supra*, 148 Cal. 723, the trial court considered the servitude to be "a 'General Easement' for pedestrian and vehicular access, ingress and egress, failing to specify the nature and extent to which the Easement may be used." In *Winslow* a city was granted a right of way over the grantor's land for the purpose of installing and maintaining water pipes. Our Supreme Court determined that "the conveyance is general in its terms and affords no basis for determining the number of pipes, their size, or their exact location." (*Id.* at p. 725.) The city initially laid a 10-inch pipe. Nine years later, it sought to lay an additional 14-inch pipe. The Supreme Court concluded that the city was "bound" by its "election" to lay the 10-inch pipe and therefore could not lay an additional pipe. (*Id.* at p. 727.) The court relied on the "well settled" rule "that where a grant of an easement is general as to the extent of the burden to be imposed on the servient tenement, an exercise of the right, with the acquiescence and consent of both parties, in a particular course or manner, fixes the right and limits it to the particular course or manner in which it has been

9

enjoyed." (*Id.* at p. 725.) On the other hand, "if the language of the grant in question, viewed in the light of all the conditions existing when it was executed, clearly gave to the [city] a right in excess of the one actually used, such right would still exist, notwithstanding the exercise for a time of a lesser privilege. [Citation.]" (*Id.* at p. 726.) The court found "nothing . . . to indicate that [the easement] was intended to give the [city] the right to increase from time to time the number of pipes laid." (*Id.* at pp. 726-727.)

The trial court here determined that, as in *Winslow*, the scope of the allegedly "general" easement is restricted to its historic use. The trial court erred as a matter of law. The easement is not a general easement within the meaning of *Winslow*. Unlike the easement in *Winslow*, the instant easement specifies its precise location, width, and length. The easement also specifies its purpose: to provide "Grantee access, ingress and egress to vehicles and pedestrians over Grantors' real property from Green Meadows Road to Grantees' real property." A comment to the Restatement Third of Property (Restatement) observes, "The purpose of an easement for 'ingress and egress' may [as here] be *specifically* defined as the entrance and exit of people, or people and vehicles, or more generally defined as access to the dominant estate." (Rest.3d Property, Servitudes, § 4.10, com. d, italics added.) There is nothing objectively ambiguous about the easement.

Ambiguity is defined as follows: "Doubtfulness; doubleness of meaning . . . indistinctness, or uncertainty of meaning of an expression used in a written instrument. Want of clearness or definiteness . . . . [¶] Ambiguity exists if reasonable persons can find different meanings in a . . . document." (Black's Law Dict.

10

(6th ed. 1990) p. 79, col. 2.)  The instant easement could have been drafted with greater specificity to narrow its scope.  The easement could have expressly stated that it was limited to landscaping purposes.  It does not.  The lack of such specificity does not make the easement objectively "ambiguous" as a matter of law.  As we discuss below, the language utilized is not doubtful, susceptible to double or different meanings, indistinct, uncertain, unclear, or indefinite.

An ambiguity is not apparent from the "failure" to specify how frequently the road can be used.  It would be unusual for a residential ingress-egress easement to quantify the number of trips allowed per day, week, or month.  Similarly, it would be unusual for such a residential easement to specify the type of vehicle allowed on the road.  As to the allegedly unspecified purpose of the easement, the purpose is clear:  to permit pedestrians and vehicles to go from point A to point B by traversing the servient estate.

The grant of the easement here is more specific than the grant of an easement in *Laux, supra*, 53 Cal.2d 512.  There, plaintiff deeded to defendant "'[a] right of way over a road as presently constructed along the East Branch of Sand Creek . . . .'" (*Id*. at p. 516.)  "No limitation as to either purpose or use by defendant, of the right of way so conveyed is stated in the deed." (*Ibid*.)  The California Supreme Court found "nothing unclear, uncertain or ambiguous" in this language.  (*Id*. at p. 523.)  The court noted:  "[I]n Tiffany, Real Property, volume 3 (3d ed.), section 803, pages 322-323, it is said: 'A grant in general terms of an easement of way will ordinarily be construed as creating a general right of way capable of use in connection with

11

the dominant tenement for all reasonable purposes. . . .'" (*Id*. at p. 525.)

After *Laux v. Freed* was decided, the Court of Appeal construed a grant "in broad terms" of an easement "for road purposes" as creating "'"a general right of way . . . for all reasonable purposes."' [Citation.]" (*Wall v. Rudolph* (1961) 198 Cal.App.2d 684, 692 (*Wall*).) "[S]uch a right . . . of use [is] 'limited only by the requirement that it be reasonably necessary and consistent with the purposes for which the easement was granted.' [Citations.]" (*Ibid.*; see *City of Pasadena v. California-Michigan Land & Water Co.* (1941) 17 Cal.2d 576, 582 ["the grant of an unrestricted easement, not specifically defined as to the burden imposed upon the servient land, entitles the easement holder to a use limited only by the requirement that it be reasonably necessary and consistent with the purposes for which the easement was granted"].) The Court of Appeal continued, "Th[e] reasonable contemplation [of the parties to an express right-of-way easement] presumptively includes *normal future development* within the scope of the basic purpose [citations] . . . ." (*Wall*, *supra*, 198 Cal.App.2d at p. 692, italics added.)

Since the parties to an express right-of-way easement presumptively contemplate "normal future development," such an easement will generally not be restricted to its historic use. (See *Red Mountain, LLC. v. Fallbrook Public Utility Dist.* (2006) 143 Cal.App.4th 333, 350, brackets in original ["'Normal future uses [of an easement] are within the reasonable contemplation of the parties and therefore permissible, but uncontemplated, abnormal uses, which greatly increase the burden, are not,'" quoting from 12 Witkin, Summary of Cal. Law (10th ed. 2005) Real Property,

12

§ 407, p. 478]; 6 Miller & Starr, Cal. Real Estate (4th ed. 2018), § 15:59, p. 15-214 ["The most common type of easement is a roadway for ingress and egress to another parcel of property. If a right of way is granted in general terms, the grantee can use it for all reasonable purposes consistent with the purposes of the grant, and to the extent that the parties have anticipated the future development of the dominant tenement"]; Rest.3d Property, Servitudes, § 4.10, comment f ["the manner, frequency, and intensity of use of the servient estate may change to . . . accommodate normal development of the dominant estate"].)

In support of their position that the servitude is restricted to its historic use, both the trial court and respondent rely upon *Rye v. Tahoe Truckee Sierra Disposal Co., Inc.* (2013) 222 Cal.App.4th 84 (*Rye*). There, an express easement provided "'for ingress, egress, parking, storage, utilities over a portion of Parcel One . . . .'" (*Id.* at p. 88.) The portion subject to the easement was approximately 100' x 102'. (*Id.* at p. 96, Appendix A.) It contained both a paved and unpaved area. The owner (Tahoe Truckee) of the dominant estate had used only the paved area and a small portion of the unpaved area. "The parties disagree[d] whether Tahoe Truckee may expand its parking [of garbage trucks] and storage [of garbage bins] within the area subject to the easement beyond its historic uses." (*Id.* at p. 86-87.) The Court of Appeal upheld the trial court's decision restricting the parking and storage area to Tahoe Truckee's historic use of the easement. The Court of Appeal reasoned, "The only evidence of the intention of the parties regarding the use of the easement is past usage and that was confined to the paved area and a portion of the unpaved area of the easement." (*Id.* at p. 93.)

13

*Rye* is distinguishable. It does not discuss the ingress-egress aspect of the easement. The appellate court noted, "The scope of the easement for ingress and egress from the area subject to the easement was not litigated." (*Rye, supra,* 222 Cal.App.4th at p. 87, fn. 3.) In *Rye,* the dispute between the parties concerned the portion of the area subject to the easement that could be used for parking and storage. Unlike *Rye,* here there is no dispute as to the usable portion of the easement. The entire 10' x 90' strip of land subject to the easement may be used for ingress and egress. "[T]he size [and location] of the right of way was fixed and defined by precise description." (*Norris v. State ex rel. Dept. of Public Works* (1968) 261 Cal.App.2d 41, 48.)

*Rye* is also distinguishable because Tahoe Truckee was not a bona fide purchaser. As we explain in the next part of this opinion, appellant is entitled to the protection afforded a bona fide purchaser. The trial court did not rule on the bona fide purchaser issue, but at oral argument in this court respondent stipulated that appellant is a bona fide purchaser.

### *As a Bona Fide Purchaser, Appellant Was Entitled to Rely on the Language of the Grant of the Easement*

"The elements of a bona fide purchaser are payment of value, in good faith and without actual or constructive notice of another's rights. Absence of notice is an essential requirement in order that one may be regarded as a bona fide purchaser. [Citation.]" (*Oakdale Village Group v. Fong* (1996) 43 Cal.App.4th 539, 547.) "'[A] bona fide purchaser for value who acquires his interest in real property without notice of another's asserted rights in the property takes the property free of such unknown rights. [Citations.]' [Citations.]" (*Melendrez v. D & I Investment, Inc., supra,* 127 Cal.App.4th at p. 1251.) "A person

14

generally has 'notice' of a particular fact if that person has knowledge of circumstances which, upon reasonable inquiry, would lead to that particular fact. [Citations.]" (*First Fidelity Thrift & Loan Assn. v. Alliance Bank* (1998) 60 Cal.App.4th 1433, 1443; see Civ. Code, § 19 ["Every person who has actual notice of circumstances sufficient to put a prudent person upon inquiry as to a particular fact has constructive notice of the fact itself in all cases in which, by prosecuting such inquiry, he or she might have learned that fact"].)

Appellant was a purchaser for value, and there is no evidence that he was not acting in good faith when he bought the Picacho property. The question is whether he had actual or constructive notice of the Lupolis' claim concerning the easement's restrictions. The language of the grant of the easement did not provide such notice. The lack of notice is supported by the following illustration from a comment to the Restatement: "There is an easement appurtenant to Whiteacre for ingress and egress over a private road crossing Blackacre. In the absence of other facts or circumstances, Able, the owner of Whiteacre, and Able's family, tenants, and invitees, are entitled to use the road 24 hours a day by any form of transportation that does not inflict unreasonable damage or unreasonably interfere with the enjoyment of Blackacre." (Rest.3d Property, Servitudes, § 4.10, com. c, illus. 1; see *Woods v. Shannon* (2015) 378 Mont. 365 [344 P.3d 413, 417], quoting com. c, illus. 1 with approval; 12 Witkin, Summary of Cal. Law (11th ed. 2017) Real Property, § 421, p. 487 ["a grant of a right-of-way without limitations or restrictions permits any reasonable use"].)

When he purchased the Picacho property, appellant did not have "notice of circumstances sufficient to put a prudent person

15

upon inquiry" whether, as the trial court said in its judgment, the easement could be used "only as reasonably necessary for landscape maintenance at the rear of the [Picacho] property." (Civ. Code, § 19.) Before the purchase, Kristi Lupoli told him that the easement "had been used for gardening." She did not say or suggest that this was the only permissible use. As we have explained *ante*, because the easement is not a general easement within the meaning of *Winslow*, the historic use of the easement did not fix its scope. (*See Mayer v. Smith* (2015 NMCA) 350 P.3d 1191, 1198 ["Although historic use is a valid and, indeed, necessary consideration in determining the scope of a prescriptive easement, we have found . . . no case law that considers historic use determinative in defining the scope of an express and unambiguous appurtenant easement"].)

As a bona fide purchaser, appellant could reasonably rely on the language of the grant of the easement. That language gave him "a use limited only by the requirement that it be reasonably necessary and consistent with the purpose[] for which the easement was granted," i.e., "access, ingress and egress to vehicles and pedestrians over Grantors' real property from Green Meadows Road to Grantees' real property." (*City of Pasadena v. California-Michigan Land & Water Co.*, *supra*, 17 Cal.2d at p. 582.) "Because servitudes are interests in land, subject to the Statute of Frauds and the recording acts, heavy emphasis is placed on the written expressions of the parties' intent. The fact that servitudes are intended to bind successors to interests in the land, as well as the contracting parties, and are generally intended to last for an indefinite period of time, lends increased importance to the writing because it is often the primary source of information available to a prospective purchaser of the land.

16

The language should be interpreted to accord with the meaning an ordinary purchaser would ascribe to it in the context of the parcels of land involved.  Searching for a particular meaning adopted by the creating parties is generally inappropriate because the creating parties intended to bind and benefit successors for whom the written record will provide the primary evidence of the servitude's meaning."  (Rest.3d Property, Servitudes, § 4.1, com. d.)

The evidence does not show that the parties to the grant of the easement - the Lupolis and the Corbetts - intended that the easement would be used "only as reasonably necessary for landscape maintenance at the rear of the [Picacho] property." The Lupolis testified that this was their subjective intent. "Although the intent of the parties determines the meaning of the contract, the relevant intent is the objective intent as evidenced by the words used by the parties and not either party's subjective intent.  [Citation.]" (*Kashmiri v. Regents of University of California* (2007) 156 Cal.App.4th 809, 838.)  "'The parties' undisclosed intent or understanding is irrelevant to contract interpretation.' [Citation.]" (*Cedars-Sinai Medical Center v. Shewry* (2006) 137 Cal.App.4th 964, 980.)  Even if the Lupolis had expressed an objective intent to limit the use of the easement to landscaping purposes, appellant would not be bound by this limitation because he was a bona fide purchaser without notice of the limitation.

*Extrinsic Evidence*

Appellant argues that, because the easement is clear and unambiguous on its face, the trial court erroneously admitted extrinsic evidence of the intent of the parties to the grant of the easement.  But facial ambiguity is not the test for the

17

admissibility of extrinsic evidence. "In ascertaining the intent of the parties, the court may resort to extrinsic evidence not only to resolve a facial ambiguity but to determine the existence of and resolve a latent ambiguity. [Citations.] An ambiguity is latent if the resort to extrinsic evidence reveals that what appears to be perfectly clear language is in fact susceptible of more than one reasonable interpretation. [Citations.]" (*Los Angeles City Employees Union v. City of El Monte* (1986) 177 Cal.App.3d 615, 622-623.) Thus, "'[t]he test of admissibility of extrinsic evidence to explain the meaning of a written instrument is not whether it appears to the court to be plain and unambiguous on its face, but whether the offered evidence is relevant to prove a meaning to which the language of the instrument is reasonably susceptible.' [Citation.]" (*Dore v. Arnold Worldwide, Inc.* (2006) 39 Cal.4th 384, 391 (*Dore*).) Here, the language of the easement is not reasonably susceptible to a meaning of "use for landscaping purposes only." (*Ibid.*) The trial court was not permitted to rely on extrinsic evidence to "add to, detract from, or vary the terms of an [unambiguous easement]." (*Continental Baking Co. v. Katz* (1969) 68 Cal.2d 512, 521.)

The situation here is different from the English case involving two cotton-bearing ships named "Peerless." (*Raffles v. Wichelhaus*, 2 Hurl. & C. 906, 159 Eng. Rep. 375 (1864) [mutual mistake].) There the contract, on its face, was patently unambiguous. The contract said that Peerless would transport cotton from Bombay to Liverpool. But there were two ships named Peerless arriving at Liverpool from Bombay months apart during a frenzied cotton market caused by the Civil War in the United States. Thus, there was a latent ambiguity. Extrinsic

18

evidence led the English court to conclude that there was no contract at all because there had been no "meeting of the minds."

*The Judgment's Prohibition Against Paving Easement*

The judgment decrees, "The Easement road surface shall remain unpaved." Appellant claims that he should be allowed to improve the easement "with an appropriate impermeable, permanent surface" to "ensure that the pathway is usable at all times, including in inclement weather." "The owner of a dominant estate may do that which is reasonably necessary to enjoy the easement and, as an incident thereto, keep it in repair and fit for use. [Citation.]" (*Scruby, supra,* 37 Cal.App.4th at pp. 706-707; see also *Zimmerman v. Young* (1946) 74 Cal.App.2d 623, 628 ["The right to use the property for road purposes carried with it a right to make necessary and reasonable improvements for the purpose for which it was intended to be used"].)

Since appellant will not be using the easement for his construction project, he has not shown that paving the easement at this time is reasonably necessary to keep it in repair and fit for its intended use. Therefore, the paving prohibition shall remain unless and until there is a proven need for paving.

*Disposition*

The judgment is reversed and the matter is remanded to the trial court with directions to prepare a new judgment consistent with the views expressed in this opinion. The trial court is not required to incorporate in the judgment the exact language set forth below. It may vary the language so long as its essence is preserved. The new judgment should include a provision that the easement may be used to the extent that the use is reasonably necessary for the convenient enjoyment of the easement and is consistent with the purpose for which the

easement was granted, i.e., access, ingress and egress to vehicles and pedestrians over Grantors' real property from Green Meadows Road to Grantees' real property, provided that the use does not unreasonably interfere with the enjoyment of, unreasonably damage, or materially increase the burden on the servient estate.

Appellant shall recover his costs on appeal.

<u>CERTIFIED FOR PUBLICATION</u>.


YEGAN, Acting P. J.


We concur:


PERREN, J.


TANGEMAN, J.

20



**10' Easement**

Zissler Property
584 Stone Meadow Ln.
Montecito, CA 93108
APN# 001-180-024

Saville Property
565 Picacho Ln.
Montecito, CA 93108
APN# 011-180-021



N

S

# APPENDIX A

```
RECORDING REQUESTED BY

AND WHEN RECORDED MAIL TO

Name        1.1. ....
Street      ..........
Address
City State & ..........
Zip Code    .. ........
```

| | |
|---|---|
| 94-024055 | Rec Fee 8.00 |
| Recorded | Cash 8.00 |
| Official Records | |
| County of | |
| Santa Barbara | |
| Kenneth A Pettit | |
| Recorder | |
| 10:02am 18-Mar-94 | PUBL BB 2 |

—————————SPACE ABOVE THIS LINE FOR RECORDER'S USE—————————

DOCUMENTARY TRANSFER TAX $ 0
☐ COMPUTED ON FULL VALUE OF PROPERTY CONVEYED, OR
☐ COMPUTED ON FULL VALUE LESS LIENS & ENCUMBRANCES
REMAINING THEREON AT TIME OF SALE.
*Peter Lupoli*
Signature of declarant or agent determining tax - firm name

# EASEMENT
## GENERAL

To clarify Easement recorded
January 21, 1994, document
number 94-005975

————◄►————

THIS AGREEMENT is made and entered into this ____16th____ day of

____March____, 19_94_, by and between __George T. Corbett and Annette W. Corbett__ *Sixty*

whose address is __584 Stone Meadow Lane, Montecito, CA__

(hereinafter called "Grantor"), and __Peter Lupoli and Kristi Lupoli,__

Assessor's Parcel Number  011-180-21-1 _____ whose address is

565 Picacho Lane, MOntecito, CA _____ (hereinafter called "Grantee").

WITNESSETH.

WHEREAS. the Grantor owns and has fee simple title to that certain parcel of real property located in the City of

__Montecito__, County of __Santa Barbara__

State of __California__, legally described as follows:
(Here insert legal description of the real property or that portion thereof to be subject to the easement, right of way or rights desired by the Grantee)

Assessor's Parcel Number  011-180-24-5 ("Grantors' real property")
Lot two (2) of Tract No. 10122 in the County of Santa Barbara, State
of California, as shown on map filed in Book 54, pages 13,14 and 15
of maps, in the office of the County Recorder of said county.

AND WHEREAS. the Grantee desires to use said real property for the purpose of*
*(Insert here nature and type of easement. right-of-way or right desired by the Grantee)

Providing Grantee access, ingress and egress to vehicles and pedestrians
over Grantors' real property from Green Meadows Road to Grantees' real property.

NOW. THEREFORE. it is hereby agreed between the parties hereto as follows:
The Grantor does hereby grant, assign and set over to the Grantee*
*(Insert here nature and type of easement. right-of-way or right granted to Grantee on the real property or any portion thereof)

An Easement over, across and on the most easterly portion of Grantors'
real property, said Easement being uniformly ten (10) feet in width,
running along the westerly side of the boundary line between Assessor's
Parcel Numbers  011-180-23-7 (now or formerly the real property of Scott
and Kirkley Wilson) and  011-180-24-5 (Grantors' real property), approximately
90.46 feet in length from a point of access on Green Meadows Road to a point
of access on Grantees' real property.

Except as to the rights granted herein, the Grantor shall continue to have the full use, occupancy and enjoyment of said real property. The Grantee hereby agrees to hold and save the Grantor harmless from any and all claims, liability and damages arising from the use, possession and occupancy of the real property as herein granted and hereby further agrees to pay for

EASEMENT—GENERAL—WOLCOTTS FORM 792—Rev 6 83
(C)1983 WOLCOTTS INC

This standard form is intended for the typical situations encountered in the field indicated. However before you sign, read it, fill in all blanks, and make whatever changes are appropriate and necessary to your particular transaction. Consult a lawyer if you doubt the form's fitness for your purpose and use

# APPENDIX B

Thomas P. Anderle, Judge

Superior Court County of Santa Barbara

_____

Cappello & Noel and A. Barry Cappello, David L. Cousineau, Jasper L. Ozbirn ; Pine Tillett Pine and Norman Pine for Defendant, Cross-complainant and Appellant.

Rogers, Sheffield & Campbell and James H. Smith, G. Michael Brelje for Plaintiff, Cross-defendant and Respondent.