Filed 1/13/25  Raymond Village v. North Orange County Community College Dist. CA4/3

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| RAYMOND VILLAGE, LLC,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>NORTH ORANGE COUNTY COMMUNITY COLLEGE DISTRICT,<br><br>Defendant and Appellant. | G062474<br><br>(Super. Ct. No. 30-2019-01099701)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Richard Y. Lee, Judge. Reversed and remanded with directions.

Atkinson, Andelson, Loya, Ruud & Romo and Stephen M. McLoughlin for Defendant and Appellant.

Sheppard, Mullin, Richter & Hampton, Sean P. O'Conner, Todd E. Lundell and Christopher D. Lawrence for Plaintiff and Respondent.

Plaintiff Raymond Village, LLC (Raymond Village) and defendant North Orange County Community College District (College District) own bordering parcels of real property that are subject to an easement agreement that had been entered into by their predecessors in 1955. Raymond Village initiated this action, asserting claims for quiet title and declaratory relief, primarily based on the allegation the easement agreement precluded College District from using their joint properties for student and employee offsite parking. Following a court trial based on the parties' joint stipulation of uncontested facts, the trial court agreed with Raymond Village and entered judgment accordingly.

We reverse. For the reasons we explain *post*, while the easement agreement confers on each party a limited right to use the other party's property for the purpose of parking for customers, employees, and servicers of onsite businesses, it does not similarly limit each party's use of its own property for parking purposes. We remand for the trial court to consider Raymond Village's additional claim College District violated the easement agreement by erecting parking signs and pay stations, and by painting letters on the asphalt of the parties' properties, and to thereafter enter a new judgment consistent with this opinion.

UNCONTESTED FACTS

Raymond Village owns real property located at the northeast corner of North Raymond Avenue and East Wilshire Avenue in Fullerton (the Raymond Village property). The parties' joint stipulation of uncontested facts (stipulated facts) include the following photograph identifying the approximate location of the Raymond Village property within the red outline:

2



College District owns a parcel of real property which borders and "directly touches the northeast portion" of Raymond Village's property (the College District parcel).[1] College District is a community college district made up of Fullerton College, Cypress College, and North Orange Continuing Education. The parties' stipulated facts do not describe Raymond Village.

---

[1] The parties stipulated the College District parcel is approximately 1.03 acres; they did not stipulate regarding the size of the Raymond Village property or the much smaller Raymond Village parcel. The stipulated facts include an aerial photograph upon which colored lines mark the respective borders of the College District parcel and the Raymond Village property, showing the Raymond Village property to be approximately three times the size of the College District parcel.

The small portion of the Raymond Village property bordering the College District parcel (the Raymond Village parcel), and the entirety of the College District parcel, are subject to a reciprocal parking easement agreement (the easement agreement) that was entered into by the parties' respective predecessors-in-interest and thereafter recorded in April 1955. In the stipulated facts, the parties refer to the combined area of the Raymond Village parcel and the College District parcel as "the Parking Area."

The stipulated facts include the below color photo identifying the College District parcel as outlined in green, the Raymond Village parcel outlined in red, and the Parking Area outlined in black.



4

With respect to "the Parking Area," the easement agreement provides, "[f]or the purpose of establishing a mutual parking agreement on the said premises, the parties hereto mutually agree as follows: [¶] . . . [¶] 4. That a perpetual easement is hereby established solely and only for the purpose of ingress and egress of pedestrians and vehicles and for customer and employee parking or for persons servicing the businesses located on the said premises, into, upon and over all that real property." In addition, paragraph 5 of the easement agreement sets forth the parties' agreement not to erect any "structures or improvements" on the property subject to the easement agreement.[2]

Since College District first leased the College District parcel in July 2018, and continuing after it purchased it in July 2019 until the present, College District has used the Parking Area as a parking lot for students and staff visiting Fullerton College, which is located several blocks away from the Parking Area. Approximately 22,000 students attend Fullerton College on a full time or part time basis, and approximately 770 staff members work at Fullerton College.

College District uses a shuttle bus to transport staff and students who park in the Parking Area to and from Fullerton College. At College District's direction, a parking pay station with large lettering stating "'Buy Parking Permit Here'" was installed in the Parking Area. Also at College

---

[2] Paragraph 5 provides: "No structure or improvements shall be erected by [College District's predecessor], its successors or assigns, upon any of the areas described in Paragraphs 1, 2, 3 and 4 hereof, [subject to an easement for flood protection purposes], and no structures or improvements shall be erected by [Raymond Village's predecessor], his heirs, devisees and assigns upon the area described in Paragraphs 1, 2, 3 or 4 hereof, [subject to the same easement for flood protection purposes]."

District's direction, parking signs that display in large lettering "'Fullerton College'" and state "'Citable Offenses'" include "'Parking Permit Required'" were installed in the Parking Area, along with signs stating "'Parking Permit Not Requested for Raymond Village LLC Customers.'" The parties further stipulated: "Other than asphalt paving, lighting, signage and a pay station, the College District Parcel is used exclusively for parking."

PROCEDURAL HISTORY

I.

RAYMOND VILLAGE SEEKS DECLARATORY RELIEF AND
TO QUIET TITLE AS TO THE EASEMENT AGREEMENT

In September 2019, Raymond Village filed a lawsuit against, inter alia,[3] College District in which it asserted claims for quiet title regarding the easement agreement, declaratory relief, breach of the easement agreement, and nuisance. In the verified second amended complaint, Raymond Village alleged the easement agreement was "specifically designed to benefit the properties (and businesses located thereon) subject to the Easement Agreement, . . . [and] not to benefit the offsite business or property of College District." It further alleged College District had "restricted (if not completely eliminated) Raymond Village's ability to use the Parking Area by, without limitation: (1) erecting restricted parking signs that display in large lettering 'Fullerton College' and warn under 'Citable Offenses' that 'Parking Permit Required'; (2) erecting parking pay stations with 'Buy Parking Permit Here' signs posted above; (3) painting 'Fullerton College' on the asphalt of the

---

[3] Raymond Village also sued Hill Ranch Partnership (Hill Ranch), the entity that sold the College District parcel to College District. Hill Ranch filed a cross-complaint against Raymond Village. Raymond Village later agreed to dismiss its claims as to Hill Ranch, and Hill Ranch agreed to dismiss its cross-complaint. Hill Ranch is not a party to this appeal.

Parking Area; and (4) acting beyond the scope of the Easement by using the Parking Area for student and staff parking to benefit Fullerton College, which is located offsite."

In the verified second amended complaint, Raymond Village prayed for, inter alia, judgment "establishing and quieting title to the Easement, including by determining Raymond Village's title and interest in the Easement and Parking Area and against the adverse claims of . . . College District," and for a permanent injunction directing College District "to abate the existing and continuing nuisance, including by removing from the Parking Area all restricted parking signs, parking pay stations, and painted letters on the black top of the Parking Area, and ceasing to use the Parking Area for purposes beyond the scope of the Easement, including for student and staff parking to benefit Fullerton College."

Raymond Village also sought a judicial declaration that (1) "College District must allow Raymond Village to access the Parking Area and make use of the Easement pursuant to the terms of the Easement Agreement"; (2) "the Easement Agreement prohibits the erection of any buildings or improvements, including parking signs, parking pay stations, and painted letters on the asphalt of the Parking Area"; (3) College District "must refrain from erecting any additional structures or improvements in the Parking Area or otherwise restricting Raymond Village's ability to park in the Parking Area pursuant to the Easement Agreement"; and (4) "College District must refrain from using the Parking Area to benefit any offsite property or businesses, including that College District must refrain from using the Parking Area for student and staff parking to benefit Fullerton College."

7

Before trial, Raymond Village dismissed its breach of contract and nuisance causes of action, leaving for trial only its equitable claims for quiet title and declaratory relief.

## II.

### FOLLOWING A BENCH TRIAL ON STIPULATED FACTS, JUDGMENT IS ENTERED IN FAVOR OF RAYMOND VILLAGE

In January 2023, the parties appeared for the court trial in this matter. The parties stipulated and requested the court review the verified second amended complaint as to the first cause of action for quiet title and second cause of action for declaratory relief, College District's answer, and the parties' respective trial briefs. They further stipulated the stipulated facts would constitute all the evidence in the matter.

After reviewing the documents identified by the parties and entertaining argument, the court entered judgment as follows: "Raymond Village shall have judgment in its favor and against College District related to the Easement Agreement as follows: [¶] 1. Under the Easement Agreement, parking in the Parking Area is limited to onsite customer and employee parking and for persons servicing onsite businesses. [¶] 2. The Easement Agreement creates the Reciprocal Parking Easement for the sole purpose of ingress and egress of pedestrians and vehicles; and for onsite business customer, employee, and service-person parking. [¶] 3. The Reciprocal Parking Easement does not contemplate an offsite business' use of the Parking Area. [¶] Title is quieted as to Raymond Village's interest in the easement."

College District appealed.

## DISCUSSION

### I.

#### GOVERNING LEGAL PRINCIPLES

"'An easement is an interest in the land of another, which entitles the owner of the easement to a limited use or enjoyment of the other's land. [Citations.] [¶] An easement creates a nonpossessory right to enter and use land in another's possession and obligates the possessor not to interfere with the uses authorized by the easement.'" (*Main Street Plaza v. Cartwright & Main, LLC* (2011) 194 Cal.App.4th 1044, 1053 (*Main Street Plaza*).) An easement may be created by an express grant (*ibid.*), as was the case here.

"An easement for a particular purpose does not include any other uses. [Citation.] 'Where the easement is founded upon a grant, . . . only those interests expressed in the grant and those necessarily incident thereto pass from the owner of the fee. *The general rule is clearly established that, despite the granting of an easement, the owner of the servient tenement may make any use of the land that does not interfere unreasonably with the easement.* [Citations.] *It is not necessary for him to make any reservation to protect his interests in the land, for what he does not convey, he still retains.*" (*Main Street Plaza, supra*, 194 Cal.App.4th at p. 1054, italics added.)

"'An easement agreement is subject to the rules of interpretation that apply to contracts. [Citations.] . . . [Citation.] As with all contracts, the paramount goal of interpreting a writing creating an easement is to determine the intent of the parties. [Citation.]' [Citation.] But "'[i]t is fundamental that the language of a grant of an easement determines the scope of the easement." [Citation.]' [Citation.] 'The extent of a servitude is determined by the terms of the grant.' (Civ. Code, § 806.)" (*Zissler v. Saville* (2018) 29 Cal.App.5th 630, 639 (*Zissler*).) We independently construe a

9

contract "'[w]hen no extrinsic evidence is introduced, or when the competent extrinsic evidence is not in conflict.'" (*Fink v. Shemtov* (2012) 210 Cal.App.4th 599, 608.)

## II.

### ONLY EACH PARTY'S RESPECTIVE USE OF THE EASEMENT AS TO THE OTHER PARTY'S PARCEL IS LIMITED TO "'CUSTOMER AND EMPLOYEE PARKING OR FOR PERSONS SERVICING THE BUSINESSES LOCATED ON THE SAID PREMISES'"

As set forth *ante*, our de novo review of the trial court's interpretation of the easement agreement requires the application of the traditional rules of contract interpretation. In so doing, "[o]ur initial inquiry is confined to the writing alone. ([Civ. Code], § 1639; [citation].) "The 'clear and explicit' meaning of these provisions, interpreted in their 'ordinary and popular sense,' unless 'used by the parties in a technical sense or a special meaning is given to them by usage' ([Civ. Code], § 1644), controls judicial interpretation. (*Id.*, § 1638.) Thus, if the meaning a layperson would ascribe to contract language is not ambiguous, we apply that meaning. [Citations.]"'" (*Mountain Air Enterprises, LLC v. Sundowner Towers, LLC* (2017) 3 Cal.5th 744, 752.)

Here, the easement agreement states "[f]or the purpose of establishing a mutual parking agreement on the said premises [the Parking Area], the parties hereto mutually agree as follows: [¶] . . . [¶] 4. That a perpetual *easement* is hereby established solely and only for the purpose of ingress and egress of pedestrians and vehicles and for customer and employee parking or for persons servicing the businesses located on the said premises [Parking Area], into, upon and over all that real property." (Italics added.)

We first observe that a property owner cannot have an easement on that owner's own property. (Civ. Code, § 805 ["'A servitude thereon cannot

10

be held by the owner of the servient tenement'"].) Civil Code section 805 "'proceeds from the rationale that a person does not need an easement in his or her own land, because all the uses of an easement are already included in the general right of fee ownership.'" (*Husain v. California Pacific Bank* (2021) 61 Cal.App.5th 717, 729.) Therefore, "'[s]o long as the entire tract . . . remained in one ownership there could be no such thing as a dominant and servient tenement between different portions of the tract.'" (*Ibid.*)

The parties' stipulated facts, consistent with the language of the easement agreement itself, establish the agreement was entered by the owners of two adjoining parcels of land (the Raymond Village parcel and the College District parcel). The easement agreement states in order to establish a mutual parking agreement, the parties mutually agreed to establish an easement "solely and only for the purpose of ingress and egress of pedestrians and vehicles[4] and for customer and employee parking or for persons servicing the businesses located on the said premises [Parking Area], into, upon and over all that real property."

The easement agreement does not purport to change the parties' respective ownership interests with regard to any portion of the Parking Area; to the contrary, the easement agreement states in its recitals it was executed "[c]ontemporaneously" with College District's predecessor in interest's (Market Land Co.) purchase of, inter alia, the College District

---

[4] The easement agreement's provision for the ingress and egress of pedestrians and vehicles is not in dispute.

11

parcel from Raymond Village's predecessor in interest (Max Zimmer).[5] Nor does the easement agreement purport to place any restriction upon each parcel owner's use of its own land, except as expressly provided as follows: (1) The original contracting parties agreed at paragraph 5 they would not erect any "structures or improvements" on either parcel in the Parking Area; (2) The original parties agreed at paragraph 6 to each "cover the portion of the real property [of the Parking Area] which is under his ownership with black top and to stripe it for parking and for driveways and to install such facilities for lighting as may be necessary in order to operate the said areas as parking areas"; (3) At paragraph 7, "the buyer" (owner of the College District parcel at the time the easement agreement was entered) agreed to make the improvements set forth in paragraph 6 "contemporaneously with the erection by the Buyer of a building upon the area owned by it adjacent to the parking area,"[6] and the "[s]eller" (owner of the Raymond Village parcel at the time the easement agreement was entered) agreed to "promptly make these improvements on the portions of real property retained by him"; and (4) "Upon effecting the improvement on the parking areas" as provided in paragraph 7, the original contracting parties each agreed to "thereafter at all times maintain the said parking areas on the portion of the real property which is under his ownership in a safe and usable condition."

There is no question the original contracting parties to the easement agreement contemplated that the Parking Area would be used for

---

[5] Market Land Co. and Max Zimmer were the original parties to the easement agreement.

[6] Our record provides no information about construction of any building adjacent to the Parking Area.

12

parking. But the easement agreement is otherwise silent regarding the circumstances and extent to which each owner may use its own parcel for parking. Furthermore, there is no extrinsic evidence in our record; the parties' stipulated facts shed no light on the circumstances surrounding the execution of the easement agreement or otherwise regarding the original parties' intent, beyond what we can discern from the language of that agreement itself.

In light of the foregoing contract language and governing legal principles summarized *ante*, the easement agreement must be construed to establish the owner of each parcel as conveying an easement to the other for the exclusive purpose of allowing for the "ingress and egress of pedestrians and vehicles and for customer and employee parking or for persons servicing the businesses located on the said premises [Parking Area], into, upon and over all that real property," and not also similarly limiting the owner's use of its own parcel with regard to parking. (See *Main Street Plaza, supra*, 194 Cal.App.4th at p. 1054.)

In other words, we conclude the easement agreement provides: (1) the owner of the Raymond Village parcel granted the owner of the College District parcel the specified easement rights as to the Raymond Village parcel, (2) the owner of the College District parcel, reciprocally granted the owner of the Raymond Village Parcel the specified easement rights as to the College District parcel; and (3) both owners agreed not to erect improvement or structures on either parcel but to maintain the Parking Area in a safe and usable condition.

Therefore, we further conclude the judgment erroneously declares the easement agreement limits all parking, by any party, anywhere within the Parking Area, to customers, employees, and business servicers of onsite

13

businesses only. For the reasons we have explained, nothing in the easement agreement prohibits either party from using its own parcel for parking other than "customer and employee parking or for persons servicing the businesses located on the said premises [Parking Area], into, upon and over all that real property."

In the respondent's brief, Raymond Village argues the trial court's interpretation of the easement agreement as limiting all parking in the Parking Area to only onsite business-related parking is consistent with "the over 60 years of [the Parking Area] being limited to onsite business parking." It further argues "[t]he original parties intended to ensure the onsite businesses had sufficient parking by creating a parking area for those onsite businesses." Similarly, in its trial brief, Raymond Village argued when Hill Ranch (College District's immediate predecessor) owned the College District parcel, "a business was plainly located on the premises, with a Walgreen store operating on Hill Ranch's property next to the Parking Area." It also argued "[t]his pattern of use tends to show the parties prior to the College District intended to reserve the Parking Area for use by onsite vehicles."

Raymond Village's arguments are not supported by the record. The parties agreed to limit the evidence at trial to the stipulated facts. Those facts include no mention of the historic use of the Parking Area, or the extent any onsite businesses existed or were planned at the time the original parties entered into the easement agreement other than what is referenced in the easement agreement itself. In any event, as the reciprocal easements established by the easement agreement are attached to and run with the land, "the historic use of the easement [would] not fix its scope." (*Zissler, supra*, 29 Cal.App.5th at p. 643; *ibid.* ["Although historic use is a valid and,

14

indeed, necessary consideration in determining the scope of a prescriptive easement, we have found . . . no case law that considers historic use determinative in defining the scope of an express and unambiguous appurtenant easement'"].)[7]

We agree, however, with the trial court's interpretation regarding the scope of the easement right provided to each party under the easement agreement. The judgment correctly provides the easement agreement's language creates a reciprocal parking easement "for the sole purpose of ingress and egress of pedestrians and vehicles; and for onsite business customer, employee, and service-person parking." As pointed out by the trial court, the easement agreement does not contemplate conferring an easement right to parking for customers or employees of offsite businesses, or for servicers of offsite businesses.

---

[7] "'Because servitudes are interests in land, subject to the Statute of Frauds and the recording acts, heavy emphasis is placed on the written expressions of the parties' intent. The fact that servitudes are intended to bind successors to interests in the land, as well as the contracting parties, and are generally intended to last for an indefinite period of time, lends increased importance to the writing because it is often the primary source of information available to a prospective purchaser of the land. The language should be interpreted to accord with the meaning an ordinary purchaser would ascribe to it in the context of the parcels of land involved. Searching for a particular meaning adopted by the creating parties is generally inappropriate because the creating parties intended to bind and benefit successors for whom the written record will provide the primary evidence of the servitude's meaning.'" (*Zissler, supra*, 29 Cal.App.5th at pp. 643–644.)

## III.

### WE REMAND FOR THE TRIAL COURT TO MAKE FINDINGS WHETHER COLLEGE DISTRICT'S PARKING SIGNS, PAY STATIONS, AND/OR PAINTED LETTERS ON THE ASPHALT OF THE PARKING AREA VIOLATE THE EASEMENT AGREEMENT

In the verified second amended complaint, Raymond Village also sought, inter alia, a judicial declaration "the Easement Agreement prohibits the erection of any buildings or improvements, including parking signs, parking pay stations, and painted letters on the asphalt of the Parking Area," and that College District "must refrain from erecting any additional structures or improvements in the Parking Area or otherwise restricting Raymond Village's ability to park in the Parking Area pursuant to the Easement Agreement." Raymond Village renewed its request for declaratory relief on this issue in its trial brief.

The judgment does not address whether and/or the extent to which the easement agreement prohibits College District from erecting parking signs, parking pay stations, and painted letters on the asphalt of the Parking Area. This is possibly because the trial court had interpreted the easement agreement to effect a wholesale prohibition of parking in the Parking Area for offsite purposes and by doing so, tacitly concluded such conduct promoting offsite purposes would necessarily violate the easement agreement. We therefore remand for the trial court to consider and make findings as to this issue in the first instance.

### DISPOSITION

The judgment is reversed. We remand with directions the trial court consider whether and/or the extent to which Raymond Village is entitled to declaratory relief regarding College District's erection of parking signs and/or pay stations, and/or its painting letters on the asphalt of the

16

Parking Area as violative of the terms of the easement agreement. The trial court shall thereafter enter a new judgment consistent with this opinion. Appellant to recover costs on appeal.

MOTOIKE, J.

WE CONCUR:


MOORE, ACTING P. J.


SANCHEZ, J.