[No. G043569. Fourth Dist., Div. Three. Apr. 27, 2011.]

THE MAIN STREET PLAZA et al., Plaintiffs, Cross-defendants and Appellants, v.
CARTWRIGHT & MAIN, LLC, et al., Defendants, Cross-complainants and Respondents;
KLEIN INVESTMENTS FAMILY LIMITED PARTNERSHIP, Defendant and Respondent.

## Counsel

Cadden & Fuller, Thomas H. Cadden, Ignacio J. Lazo and Michael P. Campbell for Plaintiffs, Cross-defendants and Appellants.

Rutan & Tucker, Clifford E. Frieden and Damon D. Mircheff for Defendant, Cross-complainant and Respondent Cartwright & Main, LLC.

Freeman, Freeman & Smiley, Gregory M. Bordo and Jared A. Barry for Defendant, Cross-complainant and Respondent Cartwright Real Estate Holdings, LLC and for Defendant and Respondent.

## Opinion

### FYBEL, J.—

#### Introduction

Plaintiffs, owners of a retail center and food court, sought a judicial declaration that they had acquired a prescriptive easement for parking and access by their tenants' customers, employees, suppliers, and other invitees, over an alleyway behind the owners' property. The alleyway is located on

plaintiffs' property and two adjoining properties. A railway easement ran along the same land as the alleyway; property taxes were assessed on the railway easement, and the holder of the railway easement paid those taxes.

Defendant owners of the two adjoining properties filed motions for summary judgment and summary adjudication. The trial court granted the motions and entered judgment, concluding that no prescriptive easement in favor of plaintiffs had arisen on defendants' properties because plaintiffs did not pay property taxes on the separately assessed railway easement. Plaintiffs appeal.

■ We reverse the order granting summary adjudication and hold that because the railway easement was not coextensive in use with plaintiffs' claimed prescriptive easement, payment of taxes by plaintiffs on the separately assessed railway easement was not an element of their claim for a prescriptive easement.

The trial court also granted the summary judgment motion filed by one of the adjoining property owners. Code of Civil Procedure section 437c, subdivision (g) requires that an order granting summary judgment (1) specify the reasons for the court's determination and (2) refer to the evidence showing no triable issue of material fact exists. Neither the court's minute order, nor the formal order prepared by the prevailing party, complies with these requirements. The two issues raised by the summary judgment motion were never addressed by the trial court at the hearing on the motion. The appellate record does not provide sufficient information to permit meaningful appellate review of these issues. Accordingly, we also reverse the order granting summary judgment.

STATEMENT OF FACTS AND PROCEDURAL HISTORY

*The Parties and Their Properties*

The Main Street Plaza, a partnership, the Kenneth J. Bourguignon and Dorothy J. Bourguignon Family Trust dated October 21, 1993, and The Bourguignon Family Limited Partnership (collectively referred to herein as Main Street Plaza) are the owners of a parcel of real property located at 2540 Main Street in Irvine, California (the Main Street parcel). The property has been developed as a retail center and food court. The Main Street parcel is bordered on the north by Main Street, from which the parcel has vehicular access to the parking lot.

Cartwright & Main, LLC, owns a parcel of real property located at 2500 Main Street, adjacent to the Main Street parcel, which is bordered by Main Street on the north, Cartwright Road on the west, and the Main Street parcel on the east (the C&M parcel). The C&M parcel is improved with an industrial building.

Cartwright Real Estate Holdings, LLC (CREH), owns the property located at 17872 Cartwright Road (the CREH parcel), which is bordered on the west by Cartwright Road, and on the north by both the Main Street parcel and the C&M parcel. The CREH parcel is improved with an industrial building and a parking lot.

A 25-foot-wide alleyway runs along the boundary line between the Main Street parcel and the C&M parcel, and the CREH parcel; the alleyway dead-ends at the eastern boundary of the Main Street parcel and the CREH parcel. A conditional easement for railway purposes was originally granted to the Atchison, Topeka and Santa Fe Railway Company, predecessor in interest to BNSF Railway Company (BNSF), to run over what is now the alleyway. The railway easement burdened a 12-and-one-half-foot-wide strip of land along the southern border of the Main Street parcel and the C&M parcel, and along the northern border of the CREH parcel. BNSF's railway easement rights were assessed property taxes separate from the taxes assessed against the fee interest for each of the three affected parcels. BNSF paid the taxes assessed against its property interests in California, including taxes assessed against its railway easement; Main Street Plaza never paid any of the taxes assessed against BNSF's railway easement.

Main Street Plaza claimed that, beginning in 1994 and continuing uninterrupted until September 2007, its tenants and their employees and invitees have used the alleyway for parking, making deliveries, and turning their vehicles around. Main Street Plaza therefore claimed a prescriptive easement for such uses over that portion of the alleyway that covers the C&M parcel and the CREH parcel.[1]

*The Complaint*

In August 2007, Main Street Plaza sued Cartwright & Main and CREH for a declaration to quiet title to its prescriptive easement in the alleyway (fourth and fifth causes of action), and for declaratory relief (sixth and seventh causes of action). A verified first amended complaint, which is the operative

---

[1] The claimed prescriptive easement does not cover any portion of the Main Street parcel; Main Street Plaza has the right to use its property for any legitimate purpose. (See *Drake v. Russian River Land Co.* (1909) 10 Cal.App. 654, 666 [103 P. 167] [easement on property cannot be held by the property owner, or the merger of the estates extinguishes the servitude].)

complaint, was filed on September 20, 2007. Klein Investments Family Limited Partnership, the owner of the CREH parcel, was later added as a Doe defendant. (In this opinion, the term CREH will also include Klein.)

Main Street Plaza's complaint also alleged causes of action against BNSF for breach of contract, rescission, declaratory relief, and to quiet title to a prescriptive easement. After the lawsuit was filed, Cartwright & Main and CREH bought BNSF's railway easement rights encumbering their respective properties. BNSF thereafter disclaimed any interest in the property, and did not participate further in the case.

Cartwright & Main and CREH each filed its own cross-complaint against Main Street Plaza and others, seeking to quiet title, and for declaratory relief and damages due to trespass.

### The Motions for Summary Judgment and Summary Adjudication

Cartwright & Main moved for summary adjudication of Main Street Plaza's causes of action against Cartwright & Main for declaratory relief and to quiet title, arguing Main Street Plaza could not prove a required element for a prescriptive easement—that Main Street Plaza had paid the taxes due on the separately assessed railway easement. CREH moved for summary judgment of Main Street Plaza's causes of action against CREH, arguing (1) Main Street Plaza could not obtain a prescriptive easement against CREH because CREH had leased the CREH parcel to a tenant during a portion of the period in which the alleged easement arose, and (2) the alleged easement would be incompatible with the Main Street parcel's conditional use permit and local ordinances and regulations. CREH also filed a joinder in the arguments and evidence offered by Cartwright & Main in support of its motion for summary adjudication. Cartwright & Main similarly filed a joinder in CREH's motion for summary judgment.

Following briefing and a hearing, the trial court granted both motions. The trial court's minute order reads: "The Motions for Summary Judgment and Summary Adjudication are GRANTED. [¶] Moving parties have met their burden to establish that the railroad easement was separately assessed. *Glatts v. Henson* (1948) 31 Cal.2d 368, 371–372 [188 P.2d 745]. In the statement of undisputed facts, Main Street Plaza did not dispute . . . that the easement was separately assessed. Therefore, Plaintiffs cannot establish a

required element for a prescriptive easement. *Gilardi v. Hallam* (1981) 30 Cal.3d 317, 322 [178 Cal.Rptr. 624, 636 P.2d 588]. Plaintiffs failed to establish that there was a triable issue of material fact." (Italics added.)

*The Orders Granting the Motions for Summary Judgment and Summary Adjudication*

On October 29, 2009, the trial court entered an order (prepared by CREH's counsel) granting CREH's motion for summary judgment; that order did not specify the reasons for the court's determination.

On December 7, 2009, the trial court entered a detailed order granting Cartwright & Main's motion for summary adjudication. In relevant part, the order reads as follows:

"Cartwright & Main is entitled to summary adjudication of plaintiffs['] . . . fourth cause of action to quiet title in Plaintiffs' favor to the alleged prescriptive easement burdening Cartwright & Main's parcel because Plaintiffs cannot, as a matter of law, establish a required element for a prescriptive easement burdening Cartwright & Main's parcel. In addition, CREH is entitled to summary adjudication of Plaintiffs' fifth cause of action to quiet title in Plaintiffs' favor to the alleged prescriptive easement burdening CREH's parcel because Plaintiffs cannot, as a matter of law, establish a required element for a prescriptive easement burdening CREH's parcel.

"Plaintiffs allege a prescriptive easement burdening the portions of the parcels owned by Cartwright & Main and CREH that were each burdened by a 12½ foot wide railroad easement (for a total width of 25 feet) in favor of BNSF Railway Company . . . . Plaintiffs also alleged that at no time after 1983 did BNSF Railway or its predecessor entity 'pay any separately assessed taxes on the easement property. . . .' . . .

"Cartwright & Main and CREH, however, have met their burden to establish that the BNSF Railway railroad easement that burdened their respective parcels was separately assessed. [Citations.] Plaintiffs did not dispute that the railroad easement was separately assessed. . . . It was also undisputed that Plaintiffs did not pay the taxes that were separately assessed on the railroad easement. . . . Therefore, Plaintiffs cannot establish a required element for a prescriptive easement, namely, that they paid the taxes that were separately assessed against the railroad easement that burdened the same

12½ foot wide portions of the Cartwright & Main and CREH parcels over which Plaintiffs asserted a prescriptive easement. [Citations.] Plaintiffs also failed to establish that there was a triable issue of material fact as to this element of their prescriptive easement claim. [¶] . . . [¶]

"Cartwright & Main is also entitled to summary adjudication on Plaintiffs' sixth cause of action for a declaration of rights declaring that Plaintiffs have established a prescriptive easement burdening Cartwright & Main's parcel because Plaintiffs cannot, as a matter of law, establish a required element for a prescriptive easement, for the same reasons as set forth above as to Plaintiffs' fourth cause of action against Cartwright & Main. And CREH is entitled to summary adjudication on Plaintiffs' seventh cause of action for a declaration of rights declaring that Plaintiffs have established a prescriptive easement burdening CREH's parcel because Plaintiffs cannot, as a matter of law, establish a required element for a prescriptive easement, for the same reasons as set forth above as to Plaintiffs' fifth cause of action against CREH.

"The additional allegations in Plaintiffs' sixth and seventh causes of action concerning BNSF Railway do not preclude summary adjudication of those causes of action as to Cartwright & Main and CREH. . . . Regardless, the other allegations in Plaintiffs' sixth and seventh causes of action have been made moot by events subsequent to Plaintiffs filing their First Amended Complaint on September 20, 2007. . . . Specifically, in both their sixth and seventh causes of action, Plaintiffs seek a declaration of rights as to the portion of BNSF Railway's easement that burdened the parcel owned by Plaintiffs. . . . BNSF Railway, however, filed a disclaimer of interest in this action on October 31, 2007 disclaiming any rights it had as to the portion of the railway easement burdening Plaintiffs' parcel. . . .

"Plaintiffs' sixth and seventh causes of action also seek a declaration concerning the scope of BNSF Railway's easement as to the parcels owned by Plaintiffs, Cartwright & Main, and CREH, respectively, that 'use of the paved Alleyway for access and for parking does not interfere with or endanger use by BNSF [Railway] of the stub line easement.' . . . This issue is irrelevant because Plaintiffs cannot establish a necessary element of a prescriptive easement burdening Cartwright & Main and CREH's parcels. It has also been made moot by events since the time Plaintiffs filed their First Amended Complaint on September 20, 2007. Specifically, the undisputed evidence shows that BNSF Railway conveyed its easement rights burdening Cartwright & Main's parcel and CREH's parcel to Cartwright & Main and CREH, respectively, by quitclaim deeds recorded on October 30, 2007. . . .

"The legal conclusion to be drawn from this undisputed evidence is that, because the BNSF Railway easement burdening Cartwright & Main's parcel,

CREH's parcel and Plaintiffs' parcel ceased to exist, at the latest, as of the date of the quitclaim deeds and BNSF Railway's disclaimer of interest, any issues concerning interference with the railway easement are moot as to Plaintiffs' sixth and seventh causes of action against Cartwright & Main and CREH."

*The Judgment*

Pursuant to the parties' stipulation, the trial court entered judgment, in relevant part, as follows:

"IT IS HEREBY ORDERED AND ADJUDGED as follows:

"1. That judgment is entered in favor of CREH and against Plaintiffs on CREH's First Amended Cross-Complaint solely on the same grounds as the October 29, 2009 Order granting CREH's Motion for Summary Judgment and the December 7, 2009 Order granting Cartwright & Main's Motion for Summary Adjudication;

"2. That judgment is entered in favor of Klein on Plaintiffs' First Amended Complaint against Klein solely on the same grounds as the October 29, 2009 Order granting CREH's Motion for Summary Judgment and the December 7, 2009 Order granting Cartwright & Main's Motion for Summary Adjudication;

"3. That judgment is entered in favor of Cartwright & Main and against Plaintiffs as to Plaintiffs' First Amended Complaint, and in favor of Cartwright & Main and against Plaintiffs on Cartwright & Main's First Amended Cross-Complaint, solely on the same grounds as the December 7, 2009 Order granting Cartwright & Main's Motion for Summary Adjudication;

"4. That, because of BNSF Railway's October 31, 2007 Disclaimer of Interest . . . it is hereby adjudged that the 2540 Main Street Plaza Property . . . is not encumbered by any easement in favor of BNSF Railway or in favor of any predecessor of BNSF Railway, and that the original grant of easement to BNSF Railway or its predecessor in interest burdening the 2540 Main Street Property is of no further force or effect as to the 2540 Main Street Property;

"5. That, based on paragraph 4 of this judgment that the 2540 Main Street Property is not encumbered by any easement in favor of BNSF Railway or any predecessor of BNSF Railway because of the Disclaimer of Interest, Plaintiffs' first, second, and third causes of action in their First Amended Complaint against BNSF Railway are dismissed without prejudice as moot."

Main Street Plaza timely appealed.

The judgment did not resolve Main Street Plaza's first amended complaint against CREH. In supplemental briefing and a stipulation, the affected parties agreed that the judgment was intended to resolve all causes of action in all operative pleadings, and the failure of the judgment to resolve Main Street Plaza's causes of action against CREH was a scrivener's error. The issues related to the causes of action against CREH in the first amended complaint have been fully briefed by the parties on appeal. The parties also agree that this court has the authority to order amendment of an appealed-from judgment to make it constitute a final appealable judgment. (*Molien v. Kaiser Foundation Hospitals* (1980) 27 Cal.3d 916, 920–921 [167 Cal.Rptr. 831, 616 P.2d 813]; *Tenhet v. Boswell* (1976) 18 Cal.3d 150, 153–154 [133 Cal.Rptr. 10, 554 P.2d 330]; *Swain v. California Casualty Ins. Co.* (2002) 99 Cal.App.4th 1, 6 [120 Cal.Rptr.2d 808].)

Therefore, in the interests of justice, to preserve judicial economy, and to prevent further delay, we order paragraph 1 of the judgment amended to read as follows: "1. That judgment is entered in favor of CREH and against Plaintiffs as to Plaintiffs' First Amended Complaint, and in favor of CREH and against Plaintiffs on CREH's First Amended Cross-Complaint solely on the same grounds as the October 29, 2009 Order granting CREH's Motion for Summary Judgment and the December 7, 2009 Order granting Cartwright & Main's Motion for Summary Adjudication."

### Discussion

We review de novo an order granting summary judgment or summary adjudication. (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 767 [107 Cal.Rptr.2d 617, 23 P.3d 1143].)

### I.

### Law Relating to Easements

■ "An easement is an interest in the land of another, which entitles the owner of the easement to a limited use or enjoyment of the other's land. [Citations.] [¶] An easement creates a nonpossessory right to enter and use land in another's possession and obligates the possessor not to interfere with the uses authorized by the easement. [Citation.]" (12 Witkin, Summary of Cal. Law (10th ed. 2005) Real Property, § 382, p. 446.) "An easement may be created by (1) an express grant, (2) an express reservation, (3) an implied grant, (4) an implied reservation, (5) necessity, (6) prescription, (7) a recorded

covenant, (8) dedication, (9) condemnation, (10) estoppel, or (11) a court decision . . . ." (6 Miller & Starr, Cal. Real Estate (3d ed. 2000) § 15:13, p. 15-61.)[2]

 "To establish the elements of a prescriptive easement, the claimant must prove use of the property, for the statutory period of five years, which use has been (1) open and notorious; (2) continuous and uninterrupted; (3) hostile to the true owner; and (4) under claim of right. [Citations.] **(4)** To establish adverse possession, the claimant must prove: (1) possession under claim of right or color of title; (2) actual, open, and notorious occupation of the premises constituting reasonable notice to the true owner; (3) possession which is adverse and hostile to the true owner; continuous possession for at least five years; and (5) payment of all taxes assessed against the property during the five-year period. [Citation.] [¶] . . . A prescriptive easement does not require payment of taxes; someone claiming a prescriptive easement must show payment of taxes only in the rare instance the easement has been separately assessed. [Citation.] [¶] Proof of the elements required for adverse possession . . . gives a successful claimant *title* to property. A successful claimant of a prescriptive easement, by contrast, gains not title but the right to make a specific *use* of someone else's property. [Citation.]" (*Mehdizadeh v. Mincer* (1996) 46 Cal.App.4th 1296, 1305 [54 Cal.Rptr.2d 284].) The party claiming the existence of a prescriptive easement bears the burden of proof, except with respect to the assessment of taxes—the party contesting the prescriptive easement bears the burden on that issue. (12 Witkin, Summary of Cal. Law, *supra*, Real Property, § 402, p. 471.)

 An easement for a particular purpose does not include any other uses. (*Scruby v. Vintage Grapevine, Inc.* (1995) 37 Cal.App.4th 697, 703 [43 Cal.Rptr.2d 810].) "Where the easement is founded upon a grant, as here, only those interests expressed in the grant and those necessarily incident thereto pass from the owner of the fee. The general rule is clearly established that, despite the granting of an easement, the owner of the servient tenement may make any use of the land that does not interfere unreasonably with the easement. [Citations.] It is not necessary for him to make any reservation to protect his interests in the land, for what he does not convey, he still retains. [Citation.] Furthermore, since he retains the right to use the land reasonably himself, he retains also the power to transfer these rights to third persons. [Citations.] Thus, in the instant case, the right of the defendant to use the particular land in controversy is derived from the owner of the servient tenements, and whether it is a permissible use is to be determined by whether the owner of the servient tenements could have used the land in that manner." (*Pasadena v. California-Michigan etc. Co.* (1941) 17 Cal.2d 576, 579 [110 P.2d 983].) The railway easement, which was created by express grant,

---

[2] The railway easement was created by express grant to BNSF's predecessor in interest.

only affected the use of any of the three parcels by its respective owner that would unreasonably interfere with the use of the railway easement.

## II.

### PAYMENT OF TAXES ON THE RAILWAY EASEMENT WAS NOT AN ELEMENT OF MAIN STREET PLAZA'S CLAIM OF A PRESCRIPTIVE EASEMENT.

Cartwright & Main argued, and the trial court found that, because BNSF's railway easement was separately assessed, and BNSF continued to pay taxes on its assessed value, Main Street Plaza could not obtain a prescriptive easement over Cartwright & Main and CREH's portions of the alleyway unless Main Street Plaza paid taxes on the railway easement.

In *Glatts v. Henson* (1948) 31 Cal.2d 368 [188 P.2d 745], the Supreme Court considered the issue of extinguishment of an easement by prescription. An easement had been granted " 'for road purposes.' " (*Id.* at p. 369.) The owners of the fee interest in the property on which the easement was located constructed buildings on the easement, without the consent of the easement claimants, and maintained those buildings for more than five years. (*Id.* at p. 370.) The court held, "an easement may be extinguished by the user of the servient tenement in a manner adverse to the exercise of the easement, for the period required to give title to land by adverse possession." (*Id.* at p. 371.) The Supreme Court further held, "[t]he nonpermissive erection and maintenance for the statutory period of permanent structures, such as buildings, which obstruct and prevent the use of the easement will operate to extinguish the easement." (*Ibid.*) Because there was a presumption that no taxes were levied on the easement, and there was no evidence that taxes were assessed separately from the taxes assessed upon the fee interest, the owners of the fee interest were determined to have prescriptively extinguished the portion of the easement for road purposes on which the buildings sat. (*Id.* at p. 372.)

In *Gilardi v. Hallam* (1981) 30 Cal.3d 317, 320–321, the defendants' predecessors in interest made improvements to a portion of a parcel of property adjacent to their own, erroneously believing the improved portion belonged to them. The improvements were not considered part of the appraisal of the defendants' property. (*Id.* at p. 321.) Because the defendants and their predecessors did not pay taxes on the portion of the property in question, the defendants could not acquire title to the property by adverse possession, despite their open, notorious, continuous, and uninterrupted use of the property that was hostile to the owner and under claim of title. (*Id.* at pp. 321, 327.) However, the Supreme Court concluded the defendants might have been able to acquire a prescriptive easement over the property: "As pointed out above, failure to pay taxes bars the claim of title by adverse

possession. However, because no taxes were separately assessed, the lack of tax payment would not bar [a] claim of prescriptive easement." (*Id.* at p. 327.)

Neither of these cases assists Cartwright & Main. *Glatts v. Henson* actually appears to undermine Cartwright & Main's argument by holding that in a case of creation or extinguishment of an easement, there is a presumption that proof of assessment and payment of taxes is not necessary: "[T]he rule as to easements is settled. In the instant case there was a presumption that no taxes were levied upon the easement and hence taxes need not be paid." (*Glatts v. Henson, supra,* 31 Cal.2d at p. 372.) In *Gilardi v. Hallam,* the court did not determine whether a prescriptive easement had been created because the parties had not briefed the issue on appeal. (*Gilardi v. Hallam, supra,* 30 Cal.3d at p. 327.) The Supreme Court's reference to easements, however, again tends to contradict Cartwright & Main's argument here: "A prescriptive easement requires establishment of the same elements [as adverse possession] except that payment of taxes is required only if *the easement* has been separately assessed." (*Id.* at p. 322, italics added.) Under this analysis, payment of taxes by BNSF on its railway easement is not relevant to the question whether the prescriptive easement exists. While Cartwright & Main argues that requiring assessment and payment of taxes on the easement being claimed would make the rule a nullity, such a requirement is consistent with the cases that emphasize the separate assessment and payment of taxes on an easement occur only rarely. (See, e.g., *Mehdizadeh v. Mincer, supra,* 46 Cal.App.4th at p. 1305.)

In the present case, the undisputed evidence showed that a portion of the property over which Main Street Plaza claimed a prescriptive easement was separately assessed for tax purposes as a railway easement, and that Main Street Plaza did not pay those taxes. However, the payment of assessed taxes on the railway easement is irrelevant to the question whether a prescriptive easement over Cartwright & Main and CREH's portions of the alleyway arose, because the railway easement and the prescriptive easement are not coextensive in use.

The railway easement was created by an express grant to BNSF's predecessor in interest only "for railroad purposes." The original grantors granted the railway easement while reserving the right to use the easement area "for any purpose whatsoever as shall not interfere with or endanger the use by the Grantee of this easement." The grantors therefore retained the right to drive over or park on the land, a right that was transferred to Main Street Plaza, Cartwright & Main, and CREH when each acquired their respective parcels. Any *use* not inconsistent with BNSF's railway easement remained held by the property owner, and could be subject to a prescriptive easement. Main

Street Plaza's claimed uses of the alleyway for deliveries, turning vehicles around, and parking are not inconsistent with the use of the railway easement for "railroad purposes," especially in light of the undisputed fact that BNSF was not actively using its railway easement during the period in which the prescriptive easement arose.

Accordingly, payment of taxes by Main Street Plaza on the railway easement was not an element of the claimed prescriptive easement. The trial court erred in granting Cartwright & Main's motion for summary adjudication on this ground.

### III.

#### THE FAILURE TO COMPLY WITH CODE OF CIVIL PROCEDURE SECTION 437C, SUBDIVISION (g), PREVENTS THIS COURT FROM CONSIDERING THE ARGUMENTS RELATING TO CREH'S MOTION FOR SUMMARY JUDGMENT.

In its motion for summary judgment, CREH raised two other arguments: (1) a prescriptive easement could not run against the reversionary fee interest in the CREH parcel while the parcel was leased to a third party, and (2) Main Street Plaza's claimed prescriptive easement violated the conditional use permit for the Main Street parcel and local laws and ordinances, and therefore could not arise under the theory that an easement cannot be acquired for an illegal purpose. The trial court did not address either of those arguments in the minute order granting the motions for summary judgment and summary adjudication, and the order granting the motion for summary judgment contains no analysis of them.

Code of Civil Procedure section 437c, subdivision (g) provides, in relevant part: "Upon the grant of a motion for summary judgment, on the ground that there is no triable issue of material fact, the court shall, by written or oral order, specify the reasons for its determination. The order shall specifically refer to the evidence proffered in support of, and if applicable in opposition to, the motion which indicates that no triable issue exists. The court shall also state its reasons for any other determination. The court shall record its determination by court reporter or written order." The trial court's failure to perform this statutory duty, however, does not automatically require a reversal. (*Ruoff v. Harbor Creek Community Assn.* (1992) 10 Cal.App.4th 1624, 1627 [13 Cal.Rptr.2d 755].) The de novo standard for appellate review of an order granting summary judgment frequently means the lack of a proper order constitutes harmless error. (*Soto v. State of California* (1997) 56 Cal.App.4th 196, 199 [65 Cal.Rptr.2d 11] ["The lack of a statement of reasons presents no harm where . . . independent review establishes the validity of the judgment."].)

In *Santa Barbara Pistachio Ranch v. Chowchilla Water Dist.* (2001) 88 Cal.App.4th 439, 449 [105 Cal.Rptr.2d 856], the appellate court reversed a judgment for noncompliance with Code of Civil Procedure section 437c, subdivision (g), because the issues were complex, the evidence was conflicting, and the trial court had disregarded contradictions in the evidence; under such circumstances, de novo review was inappropriate: "Without a sufficient statement of reasons from the court, we are precluded from undertaking a meaningful review of the issues." (See also *Tera Pharmaceuticals, Inc. v. Superior Court* (1985) 170 Cal.App.3d 530, 532–533 [215 Cal.Rptr. 923].)

In this case, as in *Santa Barbara Pistachio Ranch v. Chowchilla Water Dist.*, the evidence on one of the central issues—whether the use of the alleyway as intended by the prescriptive easement would be inconsistent with the Main Street parcel's conditional use permit or with local laws, ordinances, or regulations—is in conflict. The factual statements in the declaration of CREH's expert witness appear to be contradicted by the statements of Main Street Plaza's expert witness, and by CREH's expert witness's deposition testimony, which was offered in opposition to the motion. The other issue raised by CREH's motion—whether the statute of limitations on the prescriptive easement period continued to be tolled during the time when the CREH parcel was not leased to a tenant—is a complex issue on which no published opinion has been cited to us as authority.

The issues raised by CREH's motion for summary judgment were not mentioned in the trial court's tentative ruling granting the motion, nor were they discussed at the hearing on the motions. The trial court's minute order does not address either of the issues. We cannot even be sure the trial court intended to rule on the issues raised by CREH's motion, given CREH's joinder in Cartwright & Main's dispositive motion.

The order granting the motion for summary judgment, which was prepared by CREH, merely states: "The Motion is granted. [¶] . . . CREH is entitled to judgment in its favor and against Plaintiffs on Plaintiffs' First Amended Complaint." Given the state of the record, this description is insufficient to permit meaningful appellate review.

DISPOSITION

Paragraph 1 of the judgment is amended to read as follows: "1. That judgment is entered in favor of CREH and against Plaintiffs as to Plaintiffs' First Amended Complaint, and in favor of CREH and against Plaintiffs on CREH's First Amended Cross-Complaint solely on the same grounds as the October 29, 2009 Order granting CREH's Motion for Summary Judgment

and the December 7, 2009 Order granting Cartwright & Main's Motion for Summary Adjudication." As amended, the judgment is reversed. Appellants to recover costs on appeal.

Rylaarsdam, Acting P. J., and Bedsworth, J., concurred.