Filed 5/21/26  King v. Vires CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| QUANDA KING, | D085932 |
| Plaintiff and Appellant, | (Super. Ct. No. 37-2023-00010362-CU-WE-CTL) |
| v. | |
| BRADLEY VIRES et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of San Diego County, Gregory W. Pollack, Judge.  Affirmed.

Quanda King, in pro. per., for Plaintiff and Appellant.

FordHarrison and Alexander J. Harwin, for Defendants and Respondents.

Quanda King appeals following summary judgment in favor of defendants Bradley Vires, Yvonne Attard, Attard Property Management, Inc. (APMI) and Joseph Boyle (collectively, Defendants).

On our de novo review, we conclude that the trial court properly granted summary judgment, and we accordingly affirm the judgment.

I.

FACTUAL AND PROCEDURAL BACKGROUND

A.     *Events Leading to the Unlawful Detainer Action*

Effective November 1, 2019, King entered into a one-year residential lease for a condominium owned by Vires (the Property).  The Property was professionally managed for Vires by APMI and Attard.

After the end of the one-year lease, Vires decided to sell the Property. Accordingly, on November 3 2020, Vires (through Attard) served King by mail with a notice that her tenancy would be terminated in 60 days (the 60-Day Notice to Terminate the Tenancy).[1]  The notice stated that the tenancy was being terminated because "Owner intends to withdraw the Premises from the rental market."  After receiving the notice, King made an offer to purchase the Property from Vires, with the condition that he provide financing and carry the note for the purchase.  Vires rejected that offer because he was not able to satisfy the conditions, but he countered with an offer to sell to King if she provided her own financing.

In mid-November 2020, Vires, through Attard, provided King with a notice of inspection of the Property so that it could be shown to prospective

_____

[1]     According to King, she received the 60-Day Notice to Terminate the Tenancy on November 5, 2020.  The record also contains a 60-Day Notice to Terminate the Tenancy that, according to the proof of service, Attard personally served on King on November 14, 2020.

2

buyers. King refused to allow entry, citing her medical condition and the pandemic. Thereafter, on November 20, 2020, Attard sent King an email stating that Vires was withdrawing the sale listing "[i]n an effort to respect your wishes and request as he is not looking for any adversity during your tenancy." Attard further stated that she had "attached again the termination of tenancy" and informed King that "in accordance with your termination of tenancy you are also entitled to a pre-inspection which can be completed prior to your move out."

King initially disputed her obligation to pay rent for the last month of her tenancy, as she contended that she had a right to "abatement" of the last month's rent. However, in early January 2021, King made payment of the December rent.

On January 12, 2021, King sent a letter and two accompanying attachments to APMI, in which she claimed a "right to not be evicted through January 31, 2021 because I am unable to pay my rent." King stated that the right arose "under the Centers for Disease Control and Prevention's order dated September 1, 2020, and extended by Section 502 of the Consolidated Appropriations Act, 2021." The first attachment was a "Declaration Under Penalty of Perjury for The Centers for Disease Control and Prevention's Temporary Halt in Evictions to Prevent Further Spread Of COVID-19," in which King affirmed that she was unable to pay her rent and would be homeless or forced to live in close quarters with others if evicted.[2] The

---

[2] The declaration was submitted in an attempt to claim protections of the federal eviction moratorium put in place by order of the Centers for Disease Control (CDC) from September 4, 2020 through December 31, 2020, and which applied when certain conditions were satisfied. (85 Fed. Reg. 55292 (Sept. 4, 2020).) The moratorium was subsequently extended by congressional action and additional CDC orders. (See *Shaffer v. United*

3

second attachment was a "Declaration of COVID-19-Related Financial Distress," which stated that it was based on Code of Civil Procedure section 1179.03, subdivision (f). By signing that declaration, King attested that she was currently unable to pay her rent due to one or more specific circumstances related to the pandemic.

Further establishing that she did not intend to vacate the Property, King sent a letter to APMI on February 1, 2021, in which she enclosed a check for 25 percent of the rent for February 2021.[3] Vires did not negotiate the check.[4]

B. *The Unlawful Detainer Action*

On February 8, 2021, Vires filed an unlawful detainer action against King. On March 9, 2021, the trial court issued a ruling which acknowledged that King had served a Declaration of COVID-19-Related Financial Distress, but stated that "the declaration does not apply." On March 16, 2021, King sent an email to Vires offering to pay him "$10,000 to halt the eviction," which Vires rejected. On April 19, 2021, following a March 25, 2021 bench trial, the trial court issued a judgment establishing that Vires was entitled to possession of the premises. The trial of the unlawful detainer action was not reported, and the trial court did not issue a statement of decision.

---

*States* (Fed. Cl. 2025) 178 Fed.Cl. 576, 578 [discussing the history of the federal eviction moratorium].)

[3] The attempted payment of only 25 percent of the monthly rental charge was apparently based on King's belief that the COVID-19 Tenant Relief Act (Former Code Civ. Proc., § 1179.01, et seq.) was applicable to her situation.

[4] Although King states that she "did not receive any notification of rejection of this rent payment," she presents no evidence showing that the check was negotiated.

4

King filed an appeal of the judgment in the unlawful detainer action and a motion to stay enforcement of the judgment pending appeal. Because Vires wanted to expeditiously sell the Property, he reached an agreement with King that he would not execute the writ of possession if she moved out of the Property by July 5, 2021. King subsequently moved out by that date, and within weeks, Vires successfully sold the Property.

C.     *The Litigation of the Instant Lawsuit*

Almost two years later, in March 2023, King filed the instant lawsuit against Vires, Attard, APMI and Joseph Boyle. Boyle was the unlawful detainer assistant who helped Vires prepare the pleadings for the unlawful detainer action. (See Bus. & Prof. Code, § 6400, subd. (a) [defining "unlawful detainer assistant"].)

King's complaint alleged (1) wrongful eviction against all Defendants; (2) retaliatory eviction against Vires; (3) fraudulent misrepresentation against Vires, APMI and Attard; (4) intentional concealment against APMI; (5) breach of duty against Vires and APMI; (6) breach of contract/month-to-month tenant agreement against Vires; and (7) infliction of emotional distress[5] against all Defendants. The complaint focused on King's contention that Defendants "used falsified documents, omitted pertinent facts, and made perjurious statements in sworn testimony to evict [her] during [a] national and state eviction ban." King alleged that the trial court in the unlawful detainer action "relied on the false statements and intentional misrepresentation to render a judgment against [her]."

---

[5]     The complaint does not specify whether King intended a claim for negligent infliction or intentional infliction of emotional distress. King's subsequent briefing clarifies she intended a claim for intentional infliction of emotional distress.

5

Defendants filed a summary judgment motion, which took two alternative approaches. First, Defendants argued that, based on the judgment against King in the unlawful detainer action, King's lawsuit was barred by the res judicata doctrines of claim preclusion and issue preclusion.[6] Second, Defendants argued that, based on the undisputed facts, none of the causes of action had merit.[7]

---

[6] There are two separate types of res judicata: claim preclusion and issue preclusion. "Claim preclusion, the ' " 'primary aspect' " ' of res judicata, acts to bar claims that were, or should have been, advanced in a previous suit involving the same parties. [Citation.] Issue preclusion, the ' " 'secondary aspect' " ' historically called collateral estoppel, describes the bar on relitigating issues that were argued and decided in the first suit." (*DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 824.) Both types of res judicata require a final adjudication in the previous suit. (*Id.* at pp. 824–825.)

[7] The exhibits submitted by Defendants in support of their motion for summary judgment were not originally included in the appellate record, and we subsequently granted Defendants' motion to augment the record with those exhibits. King also filed a motion to augment. Several of the exhibits in King's motion to augment overlap with the exhibits in Defendants' motion to augment. We deny King's motion to augment as to those exhibits because augmentation is unnecessary due to our ruling granting Defendants' motion to augment. As to the remaining three documents that King identifies in her motion to augment (exhibits 1, 2 and 3), King has not shown that those documents were ever submitted to the trial court in connection with the motion for summary judgment. Because "[a]ugmentation does not function to supplement the record with materials not before the trial court" (*Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444), we deny King's motion to augment as to those remaining exhibits.

On December 1, 2025, King filed a request for judicial notice, which defendants have not opposed. The request for judicial notice contains various documents that we may judicially notice because they are official public records and legislative enactments. (Evid. Code, §§ 451, 452). We grant the request for judicial notice, although we caution King that for statutory provisions, there is no need to request judicial notice and submit copies of the

On December 13, 2024, the trial court granted summary judgment in favor of Defendants, reaching only the issue of res judicata. Specifically, the trial court concluded that each cause of action was barred by either claim preclusion or issue preclusion due to the resolution of the unlawful detainer action. The trial court did not reach Defendants' alternative ground for summary judgment, namely, that based on the undisputed facts, none of King's causes of action had merit.

On December 18, 2024, King filed a motion for reconsideration. (Code Civ. Proc., § 1008.)[8] For the first time in that motion, King submitted evidence suggesting that, in exchange for her agreement to dismiss her appeal in the unlawful detainer action and to move out of the Property by a specific date, the judgment in the unlawful detainer action was set aside and the action dismissed without prejudice on July 23, 2021. King argued that, accordingly, there was no final judgment in the unlawful detainer action to support the application of res judicata.

---

statutes; a legal citation to a statute in a party's appellate brief is sufficient.

[8]    King also filed a "request for statement of decision" pursuant to Code of Civil Procedure 632 on December 19, 2024. On January 3, 2024, the trial court issued an order stating: "This court will *not* be issuing a Statement of Decision under [Code of Civil Procedure section] 632, inasmuch as a Statement of Decision is not required upon ruling on a motion for summary judgment." The order further explained, "At the time of oral argument, the court advised the parties of its ruling and reasons therefor. Thereafter, the court followed up with a written order under [Code of Civil Procedure section] 437c(g) specifying the reasons for its granting defendants' motion for summary judgment." Although not clear from her opening appellate brief, King has clarified in her appellate reply brief that she does not intend to argue on appeal that she was entitled to a statement of decision pursuant to Code of Civil Procedure 632.

7

Specifically, in support of her motion King submitted: (1) a May 7, 2021 order by the trial court in the unlawful detainer action, which stayed King's lockout from the Property until July 6, 2021, and stated that "[Vires] shall set aside judgment and dismiss the case without prejudice upon [King's] timely move-out;" and (2) the register of actions in the unlawful detainer action, which showed the status of the lawsuit as "dismissed" and which listed a July 22, 2021 "Declaration - Other (to Set Aside Judgment and Dismiss Action Without Prejudice and Order Signed on 7/23/21) filed by Vires, Bradley."[9]

Two days later, while King's motion for reconsideration was pending, the trial court entered judgment in favor of Defendants on December 20, 2024.

On March 14, 2025, the trial court denied King's motion for reconsideration. The trial court explained that it lacked jurisdiction to grant reconsideration under Code of Civil Procedure section 1008 because it had already entered judgment.

King filed a notice of appeal from the judgment on March 14, 2025.

---

[9] In her motion to augment filed with this court on September 11, 2025, King submitted, as Exhibit 1, the order setting aside the judgment in the unlawful detainer action and dismissing the action without prejudice, dated July 23, 2021. As we have explained, augmentation of the record with that exhibit is improper because it was not before the trial court. Nevertheless, in the interest of understanding what occurred in the unlawful detainer action, on our own motion we take judicial notice of the trial court's July 23, 2021 order in the unlawful detainer action, which set aside the judgment and dismissed the action without prejudice. (Evid. Code, § 452, subd. (d) [authorizing judicial notice of the "[r]ecords of . . . any court of this state"].)

## II.

## DISCUSSION

A.    *Legal Standards for an Appeal From a Summary Judgment Ruling*

King's appeal challenges the trial court's ruling granting summary judgment in favor of Defendants. " 'A trial court properly grants a motion for summary judgment where "all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc. § 437c, subd. (c).) "Because this case comes before us after the trial court granted a motion for summary judgment, we take the facts from the record that was before the trial court when it ruled on that motion. [Citation.] ' "We review the trial court's decision de novo, considering all the evidence set forth in the moving and opposing papers except that to which objections were made and sustained." ' [Citation.] We liberally construe the evidence in support of the party opposing summary judgment and resolve doubts concerning the evidence in favor of that party." ' " (*Hampton v. County of San Diego* (2015) 62 Cal.4th 340, 347.)

" 'The purpose of the law of summary judgment is to provide courts with a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute.' [Citation.] It necessarily follows that the pleadings frame the issues on a motion for summary judgment. '[T]he burden of a defendant moving for summary judgment only requires that he or she negate plaintiff's theories of liability *as alleged in the complaint*; that is, a moving party need not refute liability on some theoretical possibility not included in the pleadings.' " (*Ahn v. Stewart Title Guaranty Co.* (2023) 93 Cal.App.5th 168, 181–182.)

B.      *Preliminary Issues*

Before turning to the merits of the summary judgment motion, we address three preliminary issues raised by King.

First, King contends that the trial court erred by sustaining Defendants' evidentiary objections to King's evidence in opposition to the summary judgment motion. Specifically, King objects that the trial court did not sufficiently explain its reasons for sustaining the objections. However, in designating the appellate record, King did not include the evidentiary objections filed by Defendants. Because King has not provided us with the evidentiary objections, we cannot meaningfully review King's challenge to the trial court's ruling on them. By providing an inadequate record for our review, King has failed to meet her burden to establish prejudicial error. (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608–609 [based on the "fundamental principle of appellate procedure that a trial court judgment is ordinarily presumed to be correct and the burden is on an appellant to demonstrate, on the basis of the record presented to the appellate court, that the trial court committed an error that justifies reversal of the judgment," " ' "if the record is inadequate for meaningful review, the appellant defaults and the decision of the trial court should be affirmed" ' "].)

Next, King contends that the trial court erred in granting Defendants' request for judicial notice. The request for judicial notice related to 14 different documents, most of which were filings in the unlawful detainer action, and three of which were documents from other lawsuits that King has filed. Although King's appellate briefing is vague on the issue, she appears to challenge *only* the ruling granting the request to take judicial notice for the three documents from her other lawsuits. However, we see no indication that King objected to the request for judicial notice in the trial court. Because

10

King did not object to the request for judicial notice in the trial court, she may not, for the first time on appeal, contend that the trial court erred in granting the request. (*Younan v. Caruso* (1996) 51 Cal.App.4th 401, 406 fn. 3 ["failure to timely object to the propriety of judicial notice . . . is deemed a waiver of that objection"].)

Finally, King contends that the trial court erred because its ruling on the summary judgment motion was not detailed enough to comply with Code of Civil Procedure section 437c, subdivision (g). Under that provision, "Upon the grant of a motion for summary judgment on the ground that there is no triable issue of material fact, the court shall, by written or oral order, specify the reasons for its determination. The order shall specifically refer to the evidence proffered in support of and, if applicable, in opposition to the motion that indicates no triable issue exists. The court shall also state its reasons for any other determination." (§ 437c, subd. (g).) Because King has not established any prejudice from the deficiencies she perceives, we need not, and do not, evaluate whether the trial court's ruling complied with Code of Civil Procedure section 437, subdivision (g). "The de novo standard for appellate review of an order granting summary judgment frequently means the lack of a proper order constitutes harmless error." (*Main Street Plaza v. Cartwright & Main, LLC* (2011) 194 Cal.App.4th 1044, 1057.) A purportedly inadequate statement of reasons for granting a summary judgment motion "presents no harm where, as here, our independent review establishes the validity of the judgment." (*Soto v. State of California* (1997) 56 Cal.App.4th 196, 199; *Ruoff v. Harbor Creek Community Assn.* (1992) 10 Cal.App.4th 1624, 1627 [a trial court's failure to perform its statutory duty under § 437c, subd. (g) "does not automatically result in reversal" because "[w]e need only

determine whether the record establishes the [moving parties'] entitlement to summary judgment in their favor"].)

C.   *Defendants' Motion for Summary Judgment Was Properly Granted*

King argues that the trial court improperly relied on the doctrine of res judicata to grant summary judgment.  In support of that argument, King places heavy reliance on the order setting aside the judgment in the unlawful detainer action, even though the trial court was not aware of that fact when it ruled on the summary judgment motion.  King further contends that the requirements for the application of res judicata are not satisfied for several additional reasons, regardless of the order setting aside the judgment. Defendants take the position that any consideration of the order setting aside the judgment in the unlawful detainer action is improper because King failed to raise that argument in opposition to the summary judgment motion. Defendants further contend that, even if we were to consider the order setting aside the judgment in the unlawful detainer action, the requirements of res judicata are nevertheless satisfied.

However, we need not, and do not, consider whether there is merit to King's contention that the trial court erred in relying on the doctrine of res judicata to the motion for summary judgment.  Although the trial court did not reach Defendants' alternative argument that King's causes of action lacked merit based on the undisputed facts, "[w]e will affirm an order granting summary judgment . . . if it is correct on any ground that the parties had an adequate opportunity to address in the trial court, regardless of the trial court's stated reasons." (*Securitas Security Services USA, Inc. v. Superior Court* (2011) 197 Cal.App.4th 115, 120.)  Here, as we will explain, regardless of whether the trial court reached the correct result in applying the doctrine of res judicata, Defendants were entitled to summary judgment

12

because they established, based on the undisputed facts, that none of King's causes of action have merit.

a.      *Wrongful Eviction*

The first cause of action alleges wrongful eviction against all Defendants.

As pled in the complaint, King's wrongful eviction claim is based on her contention that Vires wrongfully instituted the unlawful detainer action even though she served a Declaration of COVID-19-Related Financial Distress in January 2021, and even though she continued to tender payment for the monthly rent.

The complaint does not specifically identify any common law or statutory basis for King's wrongful eviction cause of action. However, King's memorandum in opposition to the motion for summary judgment suggests King intended to assert a cause of action under the common law. Specifically, King cited *Spinks v. Equity Residential Briarwood Apartments* (2009) 171 Cal.App.4th 1004, 1039. That opinion explains the requirements for a cause of wrongful eviction based on common law: "A person in peaceable possession of real property may recover, in an action sounding in tort, damages for injuries to his person and goods caused by *the forcible entry* of one who is, or claims to be, the lawful owner or possessor." (*Ibid.*, italics added.)

If King intended to allege a wrongful eviction cause of action based on a common law theory, that cause of action is without merit because the undisputed facts show that King did not suffer any *forcible entry* to the Property. Instead, King relinquished possession of the Property after Vires filed an unlawful detainer action, obtained a judgment, and then entered into an agreement with King that she would move out of the Property by a specific

13

date.  (Compare *Spinks*, at p. 1042 ["By dispossessing plaintiff *without* resort to judicial process, defendants exposed themselves to potential tort liability for wrongful eviction," italics added].)

It is also possible that, because the wrongful eviction cause of action focuses on King's service of a Declaration of COVID-19-Related Financial Distress in January 2021, King may have intended to base her wrongful eviction cause of action on the COVID-19 Tenant Relief Act (Code Civ. Proc., § 1179.01, et seq.).[10]  Broadly described, while that law was in effect, a tenant who provided a declaration attesting to COVID-19 related financial distress[11] could not be found guilty of unlawful detainer based on nonpayment of COVID-19 rental debt[12] if the tenant also tendered 25 percent of the required rent.  (See Code Civ. Proc., § 1179.03, subd. (g)(1)(A).)  However, a tenant was not protected from an unlawful detainer judgment if the termination of the tenancy was a "no-fault just cause" termination (Code Civ. Proc., § 1179.03.5 (a)(3)(A)(ii)(I)), including termination based on "[w]ithdrawal of the residential real property from the rental market."  (Civ. Code, § 1946.2, subd. (b)(2)(B).)

_____

[10]    The COVID-19 Tenant Relief Act was repealed as of Oct. 1, 2025, (Stats. 2021, ch. 27 (A.B. 832), § 19), but it was in effect during the litigation of Vires's unlawful detainer action against King.  We refer to the statutory provisions as they existed at the time of the litigation of the unlawful detainer action.

[11]    "COVID-19 related financial distress" refers to certain enumerated and unenumerated "circumstances related to the COVID-19 pandemic that have reduced a tenant's income or increased a tenant's expenses."  (Code Civ. Proc., § 1179.02, subd. (b).))

[12]    " 'COVID-19 rental debt' means unpaid rent or any other unpaid financial obligation of a tenant under the tenancy that came due during the covered time period."  (Code Civ. Proc., § 1179.02, subd. (c).)

14

Here, the protection against unlawful detainer proceedings, as set forth in the COVID-19 Tenant Relief Act is inapplicable because the termination of King's tenancy was based on a type of no-fault just cause that is excepted from the scope of the COVID-19 Tenant Relief Act. Specifically, the record supports no other reasonable inference than that Vires sought to terminate King's tenancy because he planned to withdraw the Property from the rental market and sell it.

b.    *Retaliatory Eviction*

The second cause of action for retaliatory eviction alleges that Vires "retaliated against [King] for assertion of her rights under SB91 and AB 3088, [King's] request for reasonable accommodations, and [King's] request for quiet enjoyment of rental unit free from landlord harassment."[13]

In her memorandum in opposition to the summary judgment motion, King specified that the cause of action for retaliatory eviction was based on Civil Code section 1942.5. Among other things, that statute prohibits landlords from bringing an action to recover possession "for the purpose of retaliating against the lessee because the lessee . . . has lawfully and peaceably exercised any rights under the law." (Civ. Code, § 1942.5, subd. (d).) As we understand King's argument, she contends that Vires retaliated against her by filing the unlawful detainer action after she served

---

[13]    The reference to "AB 3088" is a citation to the legislation that originally enacted the COVID-19 Tenant Relief Act, along with other pandemic-related legislation. (Stats. 2020, ch. 37.) The reference to "SB91" is a citation to legislation enacted in January 2021, which amended the COVID-19 Tenant Relief Act and enacted other pandemic-related legislation. (Stats. 2021, ch. 2.)

the Declaration of COVID-19-Related Financial Distress in January 2021 and after she claimed to have a right to "abatement" of the last month's rent.

However, the record does not support a reasonable inference that Vires filed the unlawful detainer action in retaliation for King's exercise of her legal rights. The undisputed evidence shows that in early November 2020, Vires notified King that he intended to sell the Property, after which he promptly listed the Property for sale. Those events occurred before King provided the Declaration of COVID-19-Related Financial Distress in January 2021, and before she engaged in a dispute with Attard about rent abatement in late December 2020. When King finally moved out of the Property, Vires sold it within a few weeks. Based on those facts, the only reasonable inference is that Vires filed the unlawful detainer action because he wanted to sell the Property but King would not leave the premises. No reasonable trier of fact could conclude that Vires filed the unlawful detainer action as retaliation for King's exercise of her legal rights.

c. *Fraudulent Misrepresentation*

The third cause of action alleges fraudulent misrepresentation against Vires, APMI and Attard.

" 'To establish a claim for fraudulent misrepresentation, the plaintiff must prove: "(1) the defendant represented to the plaintiff that an important fact was true; (2) that representation was false; (3) the defendant knew that the representation was false when the defendant made it, or the defendant made the representation recklessly and without regard for its truth; (4) the defendant intended that the plaintiff rely on the representation; (5) the plaintiff reasonably relied on the representation; (6) the plaintiff was harmed; and (7) the plaintiff's reliance on the defendant's representation was

16

a substantial factor in causing that harm to the plaintiff." ' " (*Graham v. Bank of America, N.A.* (2014) 226 Cal.App.4th 594, 605–606 (*Graham*).)

As pled in the complaint, the cause of action for fraudulent misrepresentation is based on two alleged misrepresentations. We discuss each in turn.

### i. *Representation About King's Provision of a Declaration Required For the Federal Eviction Moratorium*

First, the complaint alleges that during the litigation of the unlawful detainer action, Vires checked a box on a form indicating that King "has not provided a statement under penalty of perjury for the Centers for Disease Control and Prevention's order for *Temporary Halt in Evictions to Prevent Further Spread of COVID-19* (85 Federal Register 55292)."[14] The relevant page of the completed form, with a footer indicating it is a page from "Plaintiff's Mandatory Cover Sheet And Supplemental Allegations—Unlawful Detainer," is attached as an exhibit to King's complaint. King contends this representation was false because she did, in fact, provide the declaration to Vires on January 12, 2021.

As noted, the elements of a fraudulent misrepresentation claim include: " ' "(1) the defendant represented to the plaintiff that an important fact was true; . . . (4) the defendant intended that the plaintiff rely on the representation; (5) the plaintiff reasonably relied on the representation; . . . ; and (7) the plaintiff's reliance on the defendant's representation was a substantial factor in causing that harm to the plaintiff." ' " (*Graham, supra*, 226 Cal.App.4th at pp. 605–606.) Here, the first and fourth elements are not

---

14 The citation to "85 Federal Register 55292" refers to the federal eviction moratorium discussed in footnote, 2, *ante*.

met because the representation was *to the trial court* in the unlawful detainer action, not to King. The fifth and seventh elements are not met because, even if the representation had been made to King rather than to the trial court, King has not submitted any evidence that she reasonably relied upon the representation or was harmed by her reliance. On the contrary, King would have known the representation was false, and therefore would not have relied on it, as she was the person who provided the declaration to Vires.

ii. *Representation About the Notice of Termination of Tenancy*

The second factual basis for the fraudulent misrepresentation cause of action is the allegation that Attard "submitted to the court a falsified [60-Day Notice to Terminate the Tenancy] along with an[ ] altered proof of personal service." Those documents are attached as an exhibit to the complaint, and King also attached them to her declaration in opposition to the summary judgment motion.

The 60-Day Notice to Terminate the Tenancy indicates that Attard signed it on November 3, 2020. The proof of service for that notice, which indicates Attard signed it on January 28, 2021, states Attard personally served the notice on November 14, 2020. In her appellate briefing, King explains that because the proof of service is dated January 28, 2021, "the falsity of this Notice is evident."

King's reliance on the 60-Day Notice to Terminate the Tenancy and its proof of service does not support a cause of action for fraudulent misrepresentation. For one thing, the fact that Attard signed the proof of service on January 28, 2021 does not reasonably support an inference that the 60-Day Notice to Terminate the Tenancy was falsified or that personal service was not, in fact, made on November 14, 2020. Attard may have

18

simply prepared the proof of service on January 28, 2021, in preparation for the unlawful detainer litigation, even though service was completed in November 2020.

Moreover, as we understand King's contention, the misrepresentation was made *to the trial court* when the 60-Day Notice to Terminate the Tenancy and its proof of service were submitted during the unlawful detainer action. Evidence of an alleged misrepresentation made to the trial court does not satisfy King's requirements to show (1) a representation made to King, (2) with the intent that she rely on it, (3) reasonable reliance by King on the representation, and (4) harm due to that reliance. (*Graham, supra,* 226 Cal.App.4th at pp. 605–606.)

   d.    *Intentional Concealment*

As alleged in the complaint, the fourth cause of action for intentional concealment, asserted only against APMI, is based on several alleged instances of concealment. First, APMI allegedly concealed that King had provided a "Declaration of Covid Related Hardship."[15] Second, APMI allegedly concealed King's "text messages" with "Holly" at APMI "which would corroborate the month-to-month tenancy agreement." Third, APMI allegedly concealed that it served a different version of the 60-Day Notice to Terminate the Tenancy that purportedly notified King of her rights under the COVID-19 Tenant Relief Act. Although the complaint is not explicit about whom the concealed facts should have been disclosed to, as we understand King's allegations, she contends that APMI was required to disclose those facts to the trial court in the unlawful detainer action.

---

[15]    The record contains no document titled "Declaration of Covid Related Hardship." We infer that King intends to refer to one of the two pandemic-related declarations that she sent to APMI on January 12, 2021.

19

The required elements of a cause of action for fraudulent concealment[16] are "(1) concealment or suppression of a material fact; (2) by a defendant with a duty to disclose the fact to the plaintiff; (3) the defendant intended to defraud the plaintiff by intentionally concealing or suppressing the fact; (4) the plaintiff was unaware of the fact and would not have acted as he or she did if he or she had known of the concealed or suppressed fact; and (5) plaintiff sustained damage as a result of the concealment or suppression of the fact." (*Graham, supra*, 226 Cal.App.4th at p. 606.)

Based on the undisputed facts, the theory that APMI wrongly concealed facts from the trial court does not satisfy the elements needed to establish a claim for fraudulent concealment. Among other problems, King is unable to satisfy the fourth element, which requires that "the plaintiff was unaware of the fact and would not have acted as he or she did if he or she had known of the concealed or suppressed fact." (*Graham, supra*, 226 Cal.App.4th at p. 606.) King undisputably had knowledge of each of the facts that APMI purportedly concealed from the court. Specifically, (1) King was the person who created and provided the pandemic-related declarations to APMI in January 2021; (2) King was one of the parties in the text messages with "Holly"; and (3) King was the recipient of the earlier Notice of Termination of Tenancy.

---

16    Although labeled a cause of action for "intentional concealment," King's citation to *Marketing West, Inc. v. Sanyo Fisher (USA) Corp.* (1992) 6 Cal.App.4th 603, 612 in her memorandum in opposition to the summary judgment motion establishes that the fourth cause of action is based on a theory of fraudulent concealment. (See *ibid*. [setting forth "the elements of an action for fraud and deceit based on concealment"].)]

e.      *Breach of Duty*

The fifth cause of action for "breach of duty" is alleged against both Vires and APMI.  Although the body of the complaint states only "Breach of Duty," the first page of the complaint specifically identifies "AB 1482" as the legal authority for the breach of duty cause of action.  "AB 1482" is the bill that was enacted as the Tenant Protection Act of 2019 (Stats. 2019, ch. 597 (A.B. 1482) [enacting Civ. Code, §§ 1946.2, 1947.12–1947.13]).  King's memorandum in opposition to the summary judgment motion confirms that the fifth cause of action is based on the Tenant Protection Act of 2019, arguing that summary judgment should be denied on the breach of duty cause of action because "[King] has established triable issues of material fact showing Defendants' failure to comply with the duties imposed under AB 1482, the Tenant Protection Act of 2019, codified in California Civil Code § 1946.2 et seq."  We accordingly evaluate the fifth cause of action to determine whether King has a meritorious claim arising under the Tenant Protection Act of 2019.

King contends that Vires and APMI violated the following provisions of the Tenant Protection Act of 2019:  (1) the prohibition on the termination of a tenancy of at least 12 months unless the termination is for just cause as defined in the statute (Civ. Code, § 1946.2, subd. (a)); and (2) the requirement that "[f]or a tenancy for which just cause is required to terminate the tenancy . . . , if an owner of residential real property issues a termination notice based on a no-fault just cause . . . , the owner shall, regardless of the tenant's income, at the owner's option, do one of the following: [¶] (A) Assist the tenant to relocate by providing a direct payment to the tenant as described in paragraph (3). [¶] (B) Waive in writing the payment of rent for the final

21

month of the tenancy, prior to the rent becoming due." (Civ. Code, § 1946.2, subd. (d)(1).)

King's contention that Vires and APMI violated these provisions of the Tenant Protection Act of 2019 is without merit because King's tenancy in Vires's condominium was not covered by the statute's just cause provisions. Specifically, section 1946.2 "shall not apply to the following types of residential real properties or residential circumstances: [¶] . . . (8) Residential real property that is alienable separate from the title to any other dwelling unit, provided that both of the following apply: [¶] (A) The owner is not any of the following: [¶] (i) A real estate investment trust . . . . [¶] (ii) A corporation. [¶] (iii) A limited liability company in which at least one member is a corporation." (Civ. Code, § 1946.2, subd. (e).) Because Vires is a natural person who owned a condominium (i.e., separately alienable residential real property), Vires's tenancy in that condominium is not subject to the just cause provisions of the Tenant Protection Act of 2019.[17]

f.    *Breach of Contract*

The sixth cause of action is titled "Breach Of Contract/Month-To-Month Tenant Agreement" and is asserted against Vires. The complaint alleges that when King's tenancy reverted to a month-to-month tenancy at the end of her one-year lease in November 2020, Vires "breached the month-to-month lease agreement by failing to acknowledge receipt of COVID Financial Hardship

---

[17]    The exemption from the just cause provisions of the Tenant Protection Act of 2019 applies only if "[t]he tenants have been provided written notice that the residential property is exempt from this section" using a specific statement. (Civ. Code, § 1946.2, subd. (e)(8)(B).) Evidence in the record establishes that King was provided with the required statement as an addendum to her lease.

Declaration from [King], by accepting [King's] rent payments and subsequently filing an Unlawful Detainer Complaint."

To the extent the breach of contract cause of action is based on an allegation that Vires accepted King's rent but nevertheless evicted her, that allegation is not supported by the evidence. Vires declared that, beginning with the January 2021 rent, he did not negotiate the checks that King sent to him. Although King's declaration states that she sent Vires rent for February and March 2021, after which she "did not receive any notification of rejection of this rent payment," King presents no evidence that Vires negotiated the checks.

To the extent the breach of contract cause of action is based on Vires's filing of the unlawful detainer action despite King's provision of a Declaration of COVID-19-Related Financial Distress in January 2021, we have already explained (in connection with the first cause of action for wrongful eviction) that King's provision of that declaration did not prevent Vires from terminating her tenancy, as the reason for termination was Vires's intention to remove the Property from the rental market so that he could sell it. (Code Civ. Proc., § 1179.03.5 (a)(3)(A)(ii)(I); Civ. Code, § 1946.2, subd. (b)(2)(B).)

g.    *Infliction of Emotional Distress*

The seventh cause of action for infliction of emotional distress alleges that "[a]s a direct and proximate result of the unlawful conduct of Defendants . . . [King] has suffered general damages including but not limited to shock, embarrassment, physical distress and injury, humiliation, emotional distress, stress and other damages." Instead of separately identifying the conduct that caused her to suffer emotional distress, the seventh cause of action relies exclusively on the allegations of the preceding causes of action to identify the distress-inducing "unlawful conduct."

23

As we have explained, however, the first through sixth causes of action are without merit and do not identify any "unlawful conduct" by Defendants. Because those causes of action fail, the seventh cause of action, which is dependent on them, fails as well.

h. *Conclusion*

As shown by the foregoing analysis, Defendants succeeded in establishing a lack of merit to each of the causes of action alleged in King's complaint, based on the undisputed facts. Accordingly, the trial court properly granted summary judgment in favor of Defendants.

D. *King's Motion For Reconsideration Was Properly Denied*

As a final matter, King contends that her motion for reconsideration was improperly denied. According to King, because she filed her motion for reconsideration *prior to* entry of judgment, the trial court erroneously concluded it lacked jurisdiction to consider the motion.

King's argument is contrary to well-established case law. "Numerous . . . cases state that a trial court may only rule on a motion for reconsideration *before* entry of judgment. [Citations.] [¶] A final judgment terminates the litigation between the parties and leaves nothing in the nature of judicial action to be done other than questions of enforcement or compliance. 'Until entry of judgment, the court retains complete power to change its decision . . . ; it may change its conclusions of law or findings of fact. [Citation.] After judgment a trial court cannot correct judicial error except in accordance with statutory proceedings. [Citations.] A motion for reconsideration is not such a motion.' " (*Ramon v. Aerospace Corp.* (1996) 50 Cal.App.4th 1233, 1237–1238.) "Once the trial court has entered judgment, it is without power to grant reconsideration. The fact that a motion for reconsideration may have been pending when judgment was

24

entered does not restore this power to the trial court." (*APRI Ins. Co. v. Superior Court* (1999) 76 Cal.App.4th 176, 182.)

Accordingly, when the trial court entered judgment while King's motion for reconsideration was pending, it lost jurisdiction to rule on that pending motion.

DISPOSITION

The judgment is affirmed. Defendants shall recover their costs on appeal.

McCONNELL, P. J.

WE CONCUR:


DATO, J.


DO, J.

25